

FILE
IN CLERKS OFFICE
SUPREME ... STATE OF WASHINGTON
DATE FEB 0 6 2014

CHIEF JUSTICE



This opinion was filed for record
at 8:00 am on Feb. 6, 2014

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| ELLENSBURG CEMENT PRODUCTS, INC., | NO. 88165-1 |
| Respondent, | EN BANC |
| v. | Filed __FEB 0 6 2014__ |
| KITTITAS COUNTY and HOMER L. (LOUIE) GIBSON, | |
| Petitioners, | |
| JAMES and DEANNA HAMILTON, and LARRY and SHERRIE MILLER, | |
| Defendants. | |

GORDON McCLOUD, J.— Homer L. Gibson applied to Kittitas County for a conditional use permit (CUP) that would allow him to conduct rock crushing and other gravel and cement production related activities on his agricultural-zoned property. Kittitas issued a determination of nonsignificance (DNS) under the State Environmental Policy Act (SEPA), chapter 43.21C RCW, and gave notice that it

would hold a public hearing on the CUP. Ellensburg Cement Products, Inc. objected to the CUP application and appealed Kittitas's SEPA DNS under the county's administrative appeal procedures. In the hearing that followed, Kittitas first considered the SEPA appeal in a "closed record" hearing, Clerk's Papers (CP) at 30, and upheld the DNS. It then held an "open record" public hearing on the CUP, CP at 103, and granted Gibson's application over Ellensburg Cement's objections. Ellensburg Cement appealed both decisions to the superior court, which affirmed, and then to the Court of Appeals, which reversed. *Ellensburg Cement Prod., Inc. v. Kittitas County,* 171 Wn. App. 691, 287 P.3d 718 (2012). The Court of Appeals held that Kittitas was statutorily required to hold an "open record hearing" on the appeal of the SEPA DNS and that rock crushing was not a permissible conditional use under Kittitas's relevant zoning regulations. *Id.* at 713. We granted Gibson's and Kittitas's petitions for review, 176 Wn.2d 1027, 301 P.3d 1047 (2013), and now affirm the Court of Appeals.

## FACTS

Gibson owned about 84 acres of property in five contiguous parcels, zoned "agricultural-20" (A-20). In 1997, the previous owner of that property had applied for and received a CUP for gravel extraction on one 13.4-acre parcel of the property.

The parties do not dispute that gravel extraction was and is a permitted conditional use in A-20 zones.

In October 2008, Gibson applied for a gravel extraction permit from the Department of Natural Resources (DNR) for an area of 60 acres. Kittitas confirmed to DNR that the gravel extraction on 60 acres had been approved by the county. In fact, the only CUP issued by Kittitas allowed gravel extraction on one 13.4 acre parcel. Nevertheless, DNR approved Gibson's permit for an area of 60 acres in December 2008. In April 2009, Kittitas issued a notice of violation to Gibson. The notice warned that gravel extraction was occurring on Gibson's property for which no CUP had been issued. The record does not show any further action by the county following the notice of violation.

In June 2010, Gibson submitted a CUP application that purported to amend the 1997 CUP to permit rock crushing in addition to gravel extraction. His application suggested that the 1997 CUP applied to all five of his parcels, totaling 84 acres. Included in the application was a copy of what appeared to be the SEPA checklist submitted with Gibson's application to DNR in 2008. The checklist submitted with his 2010 application to Kittitas, however, was altered—the original checklist referred to mining an area of 60 acres, whereas the list submitted to Kittitas referred to 84 acres.

Ellensburg Cement objected to Gibson's application in August 2010. It noted several of the discrepancies discussed above and also asserted that the county could not rely only on the 2008 SEPA checklist but, rather, should conduct its own independent SEPA review. Kittitas disagreed, determined that Gibson's application was complete, and published a notice of the application and notice of its intent to issue a SEPA DNS. Written comments were invited, received, and placed in the record for consideration. In October 2010, Kittitas issued a SEPA DNS. At the same time, the county gave notice that it would hold a public hearing on the CUP application. Ellensburg Cement appealed the SEPA DNS.

Kittitas held the hearing on the SEPA appeal on May 11, 2011, and upheld the DNS. The hearing's procedures were dictated by Kittitas's "new procedure for administrative appeals." CP at 108. Under that new procedure, "[n]o new evidence or testimony shall be given or received" and the "hearing body shall deliberate on the matter in public in the manner of a closed record hearing." KITTITAS COUNTY CODE (KCC) 15A.07.020(1), (2).

Directly following this closed record hearing on the SEPA appeal, Kittitas held an "open record hearing" on Gibson's CUP application. CP at 103. Ellensburg Cement objected to Gibson's CUP application and was permitted to present arguments and testimony, as were all interested parties. Ellensburg Cement argued,

among other things, that rock crushing was not a permitted conditional use on A-20 land. The hearing board disagreed and approved the application. CP at 103.

Ellensburg Cement appealed both decisions—the one from the "closed record" SEPA appeal and the one from the "open record" CUP application hearing— through the Land Use Petition Act (LUPA), chapter 36.70C RCW, to Kittitas County Superior Court. The superior court affirmed. CP at 534. Ellensburg Cement then appealed to the Court of Appeals. The Court of Appeals held that Kittitas erred by holding a "closed record" hearing, rather than an "open record" hearing, on the SEPA appeal. *Ellensburg Cement*, 171 Wn. App. at 712-13. It also held that rock crushing was not a permitted conditional use on A-20 land. *Id.* at 706. Kittitas and Gibson sought review in this court, we accepted review, and we now affirm the Court of Appeals.

## ANALYSIS

### I. STANDARD OF REVIEW

Judicial review of land use decisions is governed by LUPA. RCW 36.70C.030. An appellate court is in the same position as the superior court when reviewing a LUPA petition. *Griffin v. Thurston County Bd. of Health*, 165 Wn.2d 50, 54, 196 P.3d 141 (2008) (citing *Isla Verde Int'l Holdings, Inc. v. City of Camas*, 146 Wn.2d 740, 751, 49 P.3d 867 (2002)). The party seeking relief must establish:

(a) The body or officer that made the land use decision engaged in unlawful procedure [sic] or failed to follow a prescribed process, unless the error was harmless;

(b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;

(c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;

(d) The land use decision is a clearly erroneous application of the law to the facts;

(e) The land use decision is outside the authority or jurisdiction of the body or officer making the decision; or

(f) The land use decision violates the constitutional rights of the party seeking relief.

RCW 36.70C.130(1).

Interpretation of a statute is a question of law that this court reviews de novo. *State v. Wentz*, 149 Wn.2d 342, 346, 68 P.3d 282 (2003) (citing *City of Pasco v. Pub. Emp't Relations Comm'n*, 119 Wn.2d 504, 507, 833 P.2d 381 (1992)). Our duty in conducting statutory interpretation is to "discern and implement" the legislature's intent. *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003) (citing *Nat'l Elec. Contractors Ass'n v. Riveland*, 138 Wn.2d 9, 19, 978 P.2d 481 (1999)). Where the plain language of a statute is unambiguous, and legislative intent is therefore apparent, we will not construe the statute otherwise. *Id.* However, plain meaning

may be gleaned "from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question." *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 11, 43 P.3d 4 (2002). The same principles apply to interpretation of municipal or county ordinances, like the Kittitas ordinance at issue here. *City of Spokane v. Fischer*, 110 Wn.2d 541, 542, 754 P.2d 1241 (1988) (citing *Puyallup v. Pac. Nw. Bell Tel. Co.*, 98 Wn.2d 443, 448, 656 P.2d 1035 (1982)).

## II. WHETHER KITTITAS'S SEPA APPEAL PROCEDURES COMPORT WITH STATE LAW

### a. Threshold Determinations under SEPA

Under SEPA, counties and other entities must include a detailed environmental impact statement (EIS) "in every recommendation or report on proposals for legislation and other major actions significantly affecting the quality of the environment." RCW 43.21C.030(c). SEPA charges the Department of Ecology with creating "[r]ules for criteria and procedures applicable to the determination of when an act of a branch of government is a major action significantly affecting the quality of the environment for which a detailed statement is required to be prepared pursuant to RCW 43.21C.030." RCW 43.21C.110(b).

Pursuant to that statutory authority, Ecology has established a "threshold determination process" to decide whether an action is a major action significantly

affecting the environment for which an EIS is required. WAC 197-11-330. "If the responsible official determines there will be no probable significant adverse environmental impacts from a proposal, the lead agency shall prepare and issue a determination of nonsignificance (DNS)." WAC 197-11-340(1). If the responsible entity issues a DNS, then no EIS is required. *See generally* WAC 197-11-330.

### b. *Appeals of Threshold SEPA Determinations*

A county or other entity[1] charged with making SEPA determinations may choose whether or not to provide an internal appeals process for challenging its determinations. *See* WAC 197-11-680(2) ("Agencies may establish procedures for such an appeal, or may eliminate such appeals altogether, by rule, ordinance or resolution."). If the entity permits an appeal of the threshold SEPA determination, however, that appeal must be tied to the underlying government action—for example, the government decision to grant or deny a CUP. RCW 43.21C.075; WAC 197-11-680(3)(v) ("If an agency does not provide for a hearing or appeal on the underlying governmental action (either a hearing on the agency's recommendation or an agency appeal hearing after the decision is made), the agency may not hold a SEPA administrative appeal, except [under circumstances not implicated here].").

---

[1] Counties, local governments, and agencies are treated interchangeably under chapter 43.21C RCW. *See* RCW 43.21C.030.

In other words, an agency or local government cannot provide an appeal of only the SEPA threshold determination. State law permits the locality or agency to provide a SEPA appeal procedure only if the locality or agency also provides for a hearing on the action to which the SEPA determination relates.

Moreover, the government entity permitting the SEPA appeal "[s]hall consolidate an appeal of [SEPA] determinations . . . with a hearing or appeal on the underlying governmental action by providing for a single simultaneous hearing." RCW 43.21C.075(3)(b). Thus state law requires that if a local government opts to provide a SEPA appeal, that appeal must occur simultaneously with a hearing on the underlying action. Moreover, and importantly for this case, a SEPA appeal must "provide for the preparation of a record for use in any subsequent appeal proceedings," and an "adequate record consists of findings and conclusions, testimony under oath, and taped or written transcript." RCW 43.21C.075(3)(c).

RCW 36.70B.060 lays out the requirements for SEPA appeals if local governments choose to provide them. Under RCW 36.70B.060(6), "if a local government elects to provide an appeal of its threshold determinations or project permit decisions, the local government shall provide for *no more than one* consolidated open record hearing on such appeal." (Emphasis added.) "The local government need not provide for any further appeal," but if it does provide a further

appeal, "it shall be a closed record appeal before a single decision-making body or officer." *Id.*

An "open record hearing" is defined as "a hearing, conducted by a single hearing body or officer authorized by the local government to conduct such hearings, that creates the local government's record through testimony and submission of evidence and information, under procedures prescribed by the local government by ordinance or resolution." RCW 36.70B.020(3). A "closed record appeal" is defined as "an administrative appeal on the record to a local government body or officer, including the legislative body, *following an open record hearing* on a project permit application when the appeal is on the record with no or limited new evidence or information allowed to be submitted and only appeal argument allowed." RCW 36.70B.020(1) (emphasis added).

The SEPA provisions of chapter 43.21C RCW thus establish that an appeal of a SEPA threshold determination must be consolidated and simultaneous with a hearing on the underlying project permit decision, and must provide for the preparation of a record, including testimony under oath, for use in subsequent proceedings. The appeals process set out in chapter 36.70B RCW then prescribes what forms such consolidated appeals must take—i.e., open record or closed record, and how many of each.

### c. The Parties' Arguments

The parties focus their arguments on the following statutory language: "if a local government elects to provide an appeal of its threshold determinations or project permit decisions, the local government shall provide for *no more than one* consolidated open record hearing on such appeal." RCW 36.70B.060(6) (emphasis added). Gibson and Kittitas argue that this means the county is free to provide less than one consolidated open record hearing—that is, none. *E.g.*, Suppl. Br. of Kittitas County at 6.

Ellensburg Cement responds that the statute cannot mean what Kittitas argues it means because, essentially, it would be absurd and contrary to due process to have a closed record appeal without any underlying open record hearing to create a record in the first place.[2] The Court of Appeals agreed with Ellensburg Cement. *Ellensburg Cement*, 171 Wn. App. at 713. But, as Kittitas points out, the legislature did not pass a statute saying "one and no more than one"; the statute states "no more than one."

---

[2] We note that if the county chose to offer no appeal at all, as the relevant statutes permit, then the appeal would go directly to superior court through LUPA. LUPA appeals are generally closed record appeals, so one might assume that the same result could occur simply by the county exercising its undisputed option not to provide an appeal. However, LUPA itself guards against this possibility: review is on a closed record only where "the parties to the quasi-judicial proceeding had an opportunity consistent with due process to make a record on the factual issues." RCW 36.70C.120(1). Otherwise, "the record for judicial review may be supplemented by evidence of material facts that were not made part of the local jurisdiction's record." RCW 36.70C.120(3).

RCW 36.70B.060(6). And "no more than one" does indeed encompass both one and none.

Ellensburg Cement contends that such an interpretation would be inconsistent with the statutory definitions of "closed" and "open" record hearings. A "closed record appeal" is defined in part as "following an open record hearing." RCW 36.70B.020(1). Thus, if Kittitas never had an open record hearing, it cannot, by definition, provide a "following" closed record appeal. Moreover, an "open record hearing" is defined as a hearing "that creates the local government's record through testimony and submission of evidence and information." RCW 36.70B.020(3). If the record is never created in an open record hearing, then, again by definition, there is no record created upon which to hold a closed record appeal.

The county responds that in fact its ordinances establish a procedure that is neither an "open record hearing" nor a "closed record appeal" under the statutory definitions, but is, instead, its own special administrative process. Kittitas asserts that it is actually "offering an administrative appeal based solely upon the record used to make the decision appealed." Suppl. Br. of Kittitas County at 5. In other words, the county argues it is free to create any appellate procedure it wants as long as it does not violate the statutory command that it does not have "more than one" open record hearing. RCW 36.70B.060(6). Instead, the county argues, it provides

neither an open record hearing nor a closed record appeal, and that is not a violation of the statute.

### d. The County's Plain Language Argument Conflicts with Related Statutes and the Statutory Scheme as a Whole

The county's argument, which is fundamentally an argument based on the plain language of the statute, has some merit; "no more than one" does, literally, encompass both one and none. But we do not stop with literal, word-by-word interpretation bereft of context. Instead, we interpret a statute's plain meaning in light of "related statutes which disclose legislative intent about the provision in question." *Campbell & Gwinn,* 146 Wn.2d at 11. And in this case several related statutes substantially undermine Kittitas's and Gibson's position.

The first related statute is RCW 36.70B.120, a statute that addresses a consolidated permit review process not at issue here. Although RCW 36.70B.120 does not apply directly to this case, it incorporates by reference the statute that we must interpret, RCW 36.70B.060(6), as follows: "if a project action requires project permits from more than one category, the local government shall provide for consolidated permit review *with a single open record hearing and no more than one closed record appeal as provided in RCW 36.70B.060.*" RCW 36.70B.120(2) (emphasis added). RCW 36.70B.120(2) thus interprets RCW 36.70B.060 as providing for "a single open record hearing and no more than one closed record

appeal." *Id.* This suggests that the legislature did in fact intend RCW 36.70B.060 to provide for "a single open record hearing," as opposed to "one or zero open record hearings," as the county and Gibson contend.

The second related statute is RCW 43.21C.075(3)(b). Under SEPA, if a county provides an appeal from its SEPA determination, the county *must* "consolidate an appeal of [SEPA] determinations . . . with a hearing or appeal on the underlying governmental action by providing for a *single simultaneous hearing.*" RCW 43.21C.075(3)(b) (emphasis added). But the county here held an open record hearing on the CUP directly after its closed record hearing on the SEPA determination. As a practical matter, if there is both a SEPA appeal and a hearing on the underlying action, it is evident that the two issues cannot literally be heard simultaneously. Further, as a practical matter, it is logical to hear and decide a SEPA appeal prior to hearing and deciding the underlying action. The county, though, did not just hold the hearings sequentially; it held one hearing under one set of rules (a closed record hearing on the SEPA appeal) followed by another hearing under another set of rules (an open record hearing on the CUP). That procedure contradicts the statutory requirement that the SEPA appeal be consolidated and simultaneous with the underlying CUP hearing. This consolidation requirement also suggests that

the legislature intended RCW 36.70B.060 to provide for at least one open record hearing, contrary to the county's and Gibson's contention.

Third, and most important for interpreting the statute at issue, RCW 43.21C.075(3)(c) states that an agency providing a SEPA appeal *must* "provide for the preparation of a record for use in any subsequent appeal proceedings, and shall provide for any subsequent appeal proceedings to be conducted on the record, consistent with other applicable law." Moreover, an "adequate record consists of findings and conclusions, testimony under oath, and taped or written transcript." *Id.* At a minimum, then, the consolidated hearing on the SEPA appeal and the underlying action must provide for introduction of testimony under oath. That requirement is consistent with the definition of an "open record hearing" in ch. 36.70B RCW, which "creates the local government's record through testimony and submission of evidence and information, under procedures prescribed by the local government by ordinance or resolution." RCW 36.70B.020(3). The requirement of testimony under oath is inconsistent with Kittitas's assertion that it may create its own administrative procedure, which is neither an open record hearing nor a closed record appeal, and which does not provide for any testimony.

The principle of expressio unius est exclusio alterius compels the same conclusion. "'Where a statute specifically designates the things or classes of things

upon which it operates, an inference arises in law that all things or classes of things omitted from it were intentionally omitted by the legislature under the maxim expressio unius est exclusio alterius—specific inclusions exclude implication.'" *Landmark Dev., Inc. v. City of Roy*, 138 Wn.2d 561, 571, 980 P.2d 1234 (1999) (quoting *Washington Natural Gas Co. v. Pub. Util. Dist. No. 1 of Snohomish County*, 77 Wn.2d 94, 98, 459 P.2d 633 (1969)). Kittitas's assertion that it may create its own proceeding that does not appear in the statute runs contrary to this canon of construction. The statutory scheme defines two proceedings: (1) an "[o]pen record hearing" that creates a record with testimony, RCW 36.70B.020(3); and (2) a "[c]losed record appeal" that follows an open record hearing, RCW 36.70B.020(1). But, as Kittitas admits, Kittitas's SEPA proceeding in this case was neither an open record hearing nor a closed record appeal. Under the expressio unius canon, therefore, the legislature's inclusion of only two types of hearings precludes Kittitas from creating its own different type of hearing.

In addition, Kittitas's argument that it may create its own proceeding, if accepted, could undermine the purpose of the SEPA appeal scheme. The scheme was enacted in part to address the problem that the "increasing number of local and state land use permits and separate environmental review processes required by agencies has generated continuing potential for conflict, overlap, and duplication

between the various permit and review processes." RCW 36.70B.010(2). If each agency may create procedures not contemplated by the statutory scheme, the problem the scheme was meant to address will be exacerbated rather than alleviated.

To sum up, the county, because it has chosen to provide a procedure for appealing SEPA determinations, is required to "consolidate an appeal of [SEPA] determinations . . . with a hearing or appeal on the underlying governmental action by providing for a single simultaneous hearing." RCW 43.21C.075(3)(b). That same SEPA appeal procedure also "[s]hall provide for the preparation of a record for use in any subsequent appeal proceedings" and an adequate record must include "testimony under oath." RCW 43.21C.075(3)(c). That scheme contemplates *at least one* open record hearing on a SEPA appeal. Read in context with those statutes, as it must be, RCW 36.70B.060(6) then *limits* the number of such open record hearings: the county "shall provide for no more than one consolidated open record hearing on such appeal." If it chooses to provide a further appeal, "it shall be a closed record appeal before a single decision-making body or officer." *Id.* And the county may "provide for no more than . . . one closed record appeal." RCW 36.70B.050(2). As a whole, the statutory scheme requires that a county that chooses to provide an appeal of its SEPA determination must provide a single simultaneous *open record* hearing

on both the SEPA determination and the underlying action, followed by an optional single closed record appeal.

Instead, Kittitas here provided a closed record hearing—a process the county claims is altogether different from anything contemplated in the statutory scheme and therefore not governed by the statutes—on the SEPA determination, followed by an open record hearing on the underlying CUP. That is not permissible under the statutory scheme interpreted as a whole and is contrary to the legislature's purpose in enacting the scheme. As explained, the statutes, read together, require at least one hearing on a SEPA appeal that includes "testimony under oath." RCW 43.21C.075(3)(c). That is consistent with the Court of Appeals' decision that the statutory language "is based on the assumption that there will be at least one open hearing." *Ellensburg Cement*, 171 Wn. App. at 711. Kittitas in this case "engaged in unlawful procedure or failed to follow a prescribed process." RCW 36.70C.130(1)(a).[3] We therefore affirm the Court of Appeals on this issue.

---

[3] Under the statute, procedural errors may be harmless. RCW 36.70C.130(1)(a). The parties do not raise the issue of harmlessness, but our review of the record suggests that the closed record proceeding that took place here was not harmless error. A board member stated during deliberations that "I'm just trying to take in all this stuff. Makes it tough when you can't ask questions." CP at 34. Another board member replied, "Well, we need to move this along." *Id.* Immediately thereafter, the board voted to deny the SEPA appeal. Under the circumstances, the county's failure to follow the record-creating procedure mandated by state law was not harmless.

III.   WHETHER THE COURT OF APPEALS FAILED TO PROVIDE PROPER DEFERENCE TO LOCAL DECISIONMAKERS BY HOLDING THAT ROCK CRUSHING WAS NOT PERMITTED BY THE ZONING REGULATIONS IN PLACE AT THE RELEVANT TIME

A-20 is an agricultural zone in Kittitas County allowing gravel extraction as a conditional use. It also formerly allowed, as a "permitted" use, the "[p]rocessing of products produced on the premises." Former KCC 17.29.020(A)(13) (2009). Gibson argues[4] that he had a CUP to extract gravel and hence gravel is a product produced on the premises. Further, he argues, rock crushing processes the gravel. Therefore, he concludes, rock crushing is a permitted use for A-20 land that has an associated CUP to extract gravel, despite the fact that no agricultural zone expressly permits rock crushing as a conditional use or otherwise.

The Court of Appeals held that this was an incorrect interpretation of the zoning ordinances. It determined that, because the use "'processing of products produced on the premises'" was a use exclusive to the four agricultural zones, the use "encompasses [only] products produced by agricultural means." *Ellensburg Cement*, 171 Wn. App. at 705. Since gravel is not produced by agricultural means, the appellate court reasoned, "and only gravel excavation is listed as a conditional

---

[4] Only Gibson petitioned the court for review on this particular issue. Kittitas's petition and supplemental briefing are limited to the open record hearing issue.

use, the logical conclusion is that rock crushing is not allowed in an A-20 zone because it is not listed as a permitted or conditional use." *Id.* at 706.

Gibson does not contest that the Court of Appeals' interpretation is plausible. Instead, he argues that the opposite interpretation by Kittitas's hearing board was also plausible. Suppl. Br. of Pet'r Gibson at 16. Gibson asserts that courts must show deference to local decisionmakers' interpretations of their own regulations, and that the Court of Appeals therefore erred by failing to show deference to the county board's plausible interpretation.

Under LUPA, a court may overturn a land use decision that is "an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise." RCW 36.70C.130(1)(b).

The statute does not require a court to show complete deference, but rather, "such deference as is due." *Id.* Thus, deference is not always due—in fact, even a local entity's interpretation of an ambiguous local ordinance may be rejected. *See Sleasman v. City of Lacey*, 159 Wn.2d 639, 646, 151 P.3d 990 (2007). Instead, the interpreting local entity "bears the burden to show its interpretation was a matter of preexisting policy." *Id.* at 647 (citing *Cowiche Conservancy v. Bosley*, 118 Wn.2d 801, 815, 828 P.2d 549 (1992)). No deference is due a local entity's interpretation that "was not part of a pattern of past enforcement, but a by-product of current

litigation." *Id.* at 646. A local entity's interpretation need not "be memorialized as a formal rule" but the entity must "prove an established practice of enforcement." *Id.* (citing *Cowiche*, 118 Wn.2d at 815).

Here, Kittitas's interpretation of its zoning ordinance was a by-product of the current litigation. Neither Gibson nor Kittitas has attempted to show that there was any preexisting policy supporting the county's interpretation of those zoning regulations. The transcript of the hearing shows the contrary—that the interpretation was entirely ad hoc. For example, one board member stated, "Well, we can't go back to the county commissioners to get their opinion on this, you know?" CP at 73. Another said, "Well, it's also difficult because this Board is not the Board that created the ordinance." CP at 74. One board member even admitted, regarding the proper interpretation of the ordinance, "I'm confused." CP at 75. The transcript thus reflects the absence of any preexisting policy regarding interpretation of the zoning ordinance at issue. There is no deference due to the hearing board's interpretation in this case.

In the absence of deference to local decisionmakers, the Court of Appeals' interpretation of the zoning ordinances is significantly more plausible than Gibson's interpretation. First, "rock crushing" is not listed as a conditional use on A-20 land; only "[s]and and gravel extraction" is listed. Former KCC 17.29.030(25) (2012),

*repealed by* KCC Ordinance 2013-001. In other Kittitas zoning ordinances, such as the one describing the "Rural 5" zone, "rock crushing" is expressly listed as a conditional use alongside "sand and gravel extraction." Former KCC 17.30A.030(5) (2012), *repealed by* KCC Ordinance 2013-001. If the county had intended to permit "rock crushing" on A-20 land, it defies reason that it would not have listed "rock crushing" as a conditional use there, as it did for "Rural 5" land. The fact that the county did not list "rock crushing" alongside "sand and gravel extraction" as conditional uses on A-20 land, as it did elsewhere in its zoning code, strongly suggests that "rock crushing" is not permitted at all on A-20 land.

Further, the use category "processing of products produced on the premises" appears only in agricultural zones. This strongly suggests that "products produced" refers to agricultural products. If "products" was interpreted as broadly as Gibson would like, then other permitted uses would be rendered superfluous. For example, there would be no reason to provide for "[h]ay processing," former KCC 17.29.020(1)(v), or "the processing of locally harvested forest crops using portable equipment," KCC 17.29.020(1)(n), since both would be encompassed by "processing of products produced on the premises." Even the extent to which that use category permits agricultural processing is called into question by the zoning

code's inclusion of "processing plants for agricultural products" as a *conditional* use on A-20 land. Former KCC 17.29.030(11).

Ellensburg Cement has successfully shown, as LUPA requires, that the county's decision was based on "an erroneous interpretation of the law." RCW 36.70C.130(1)(b). We hold that no deference was due the local decisionmakers in this case and affirm the Court of Appeals' decision that "rock crushing" was not a permitted use on A-20 land under former KCC 17.29.020 and former KCC 17.29.030.

## CONCLUSION

Kittitas's SEPA appeal procedure did not comport with state law. A statute does state that Kittitas must provide "no more than one" open record hearing, which on its face encompasses both "one" and "none." But the statutory scheme as a whole makes clear that Kittitas must provide at least one open record hearing that includes testimony under oath. Because Kittitas did not provide such an open record hearing in this case, the Court of Appeals correctly held that the county's procedure violated state law. Finally, the Court of Appeals correctly held that rock crushing was not a permitted use on Gibson's land under the zoning regulations in place at the time. We affirm the Court of Appeals.

_[signature]_ George McCloud, Jr.

WE CONCUR:

_[signature]_ Madsen, C.J.

_[signature]_

_[signature]_ J.M. Johnson

_[signature]_ Stephens, J.

_[signature]_ Owens, J.

_[signature]_ Wiggins, J.

_[signature]_ Fairhurst, J.

_[signature]_ Gonzalez, J.