IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

FULLER STYLE, INC., a Colorado
corporation,

               Appellant,

v.

CITY OF SEATTLE, a Washington
municipal corporation,

               Respondent,

      and

CANAL VIEW PROPERTIES, L.L.C., a
Washington limited liability company,

               Other Necessary
               Party.

STEADY FLOATS, INC., a Washington
corporation,

               Appellant,

v.

CITY OF SEATTLE, a Washington
municipal corporation,

               Respondent,

      and

COMMERCIAL MARINE CONSTRUC-
TION CO., a Washington corporation,

               Other Necessary
               Party.

No. 79181-8-I

DIVISION ONE

PUBLISHED OPINION

FILED: December 23, 2019

No. 79181-8-I/2

FULLER STYLE, INC., a Colorado corporation,

         Appellant,

    v.

CITY OF SEATTLE, a Washington municipal corporation,

         Respondent,

    and

EWING STREET MOORINGS, L.L.C., a Washington limited liability company,

         Other Necessary Party.

SMITH, J. — Appellants Fuller Style Inc. and Steady Floats Inc. filed three land use petitions challenging the city of Seattle's (City) Department of Construction and Inspections' (SDCI) orders. In the orders, the SDCI concluded that replacement of previously existing floating on-water residences (FOWRs) constitutes substantial development under the Shoreline Management Act of 1971 (SMA), chapter 90.58 RCW, and the City's corresponding Shoreline Management Plan (SMP). Specifically, the SDCI determined that the replacements were not subject to the normal maintenance or repair exemption from shoreline substantial development permit (SSDP) requirements. Therefore, the SDCI required Fuller Style and Steady Floats to obtain SSDPs to replace the existing FOWRs. Fuller Style and Steady Floats consolidated their land use petitions in the superior court, which upheld the SDCI's orders.

We conclude that Fuller Style and Steady Floats failed to meet their burdens to show a violation of the Land Use Petition Act (LUPA), chapter 36.70C RCW, and that

2

the SDCI did not err in its interpretation of the SMA's definition of "development" or in its application of the law to the facts. Therefore, we affirm.

## BACKGROUND

### Shoreline Management Act

Washington's legislature enacted the SMA "to insure the development of [the state's] shorelines in a manner which . . . will promote and enhance the public interest . . . [and] protect[ ] against adverse effects to the public health, the land and its vegetation and wildlife, and the waters of the state and their aquatic life, while protecting generally public rights of navigation and corollary rights incidental thereto." RCW 90.58.020. The SMA applies, with some exceptions, to the "shorelines" of the state, i.e., "the water areas of the state" and "their associated shorelands, together with the lands underlying them." RCW 90.58.030(2)(e). To carry out its purpose, the SMA requires local governments to develop and enforce an SMP. See RCW 90.58.080. An SMP is a comprehensive use plan, "constitut[ing] use regulations for the various shorelines of the state." RCW 90.58.030(3)(b); RCW 90.58.100(1).

The City codified its SMP in its land use code. See ch. 23.60A SEATTLE MUNICIPAL CODE (SMC). The SDCI implements and updates the City's SMP. The SMP applies to the "Shoreline District," which "includes all shorelines of the City over which it has jurisdiction." SMC 23.60A.010(A). And "[a]ll property located within the Shoreline District is subject both to the standards of the applicable zone and to the requirements imposed by" the SMP. SMC 23.60A.010(B). The City's SMP defines its purpose as regulating development, uses, and shoreline modifications consistent with (1) "[p]rotect[ing] the ecological functions of the shoreline areas;" (2) "[e]ncourag[ing]

3

water-dependent uses;" (3) "[p]rovid[ing] for maximum public access to, and enjoyment of the shorelines of the City;" and (4) "[p]reserv[ing], enhanc[ing], and increas[ing] views of the water." SMC 23.60A.002(B).

Development on shorelines must be consistent with the policies and purpose of the SMA as adopted in the applicable SMP or "shall not be undertaken." RCW 90.58.140(1); SMC 23.60A.010. Specifically, an SSDP "is required prior to undertaking any development unless the [City] determines the development is not substantial development or [the City] has issued an exemption." SMC 23.60A.020(A)(1); RCW 90.58.140(2).

One such exemption exists for FOWRs. In 2014, the legislature adopted special SMA provisions for FOWRs. A FOWR is "any floating structure . . . that is designed or used primarily as a residence, has detachable utilities, and is the subject of a lease or sublease at a marina." SMC 23.60A.912. The owner of a pre-existing FOWR must verify the FOWR with the City in order to obtain "legal establishment of a [FOWR] pursuant to the requirements" of the City's SMP. SMC 23.60A.203(D). Once verified, a FOWR is a conforming use—authorized to remain over shoreline waters, despite nonwater dependent uses not being preferred uses in the Shoreline District under the SMP—if prior to July 1, 2014, the floating structure "[w]as legally established as a [FOWR]" and "[w]as moored pursuant to a lease or ownership interest at a marina . . . within the City." SMC 23.60A.944; SMC 23.60A.203(B). A verified FOWR is not subject to SSDP requirements where the development involves normal maintenance or repair of the structure. SMC 23.60A.203(C)(1).

4

*Facts*

In November and December of 2017, Fuller Style and Steady Floats sought normal maintenance or repair exemptions for the replacement of three FOWRs: FOWR 873, FOWR 811, and FOWR 801. It is unclear whether the FOWRs have been constructed. However, according to the applications submitted to the SDCI, Steady Floats would construct FOWR 873's replacement at the Snow and Company Shipyard in Seattle. Fuller Style would construct FOWR 811's and FOWR 801's replacements at Canal Boatyard in Seattle. Thus, the replacements for all three FOWRs would be constructed landward of the Shoreline District boundary. The replacement of the previous FOWRs and moorage of the newly constructed FOWRs would occur within the Shoreline District. Each FOWR replacement would be launched using a vessel launch system and towed to its moorage, and thereafter, FOWR verification with the City would be updated pursuant to SMC 23.60A.203(C)(1)(d).

The SDCI denied all three applications for exemptions and directed the parties to obtain an SSDP for each replacement FOWR. Specifically, the SDCI concluded that the replacement of the FOWRs constitutes substantial development and the normal maintenance and repair exemption does not apply because replacement is not the common method of repair for FOWRs. Fuller Style and Steady Floats brought three LUPA petitions, which they later consolidated, challenging the SDCI's orders. The superior court denied the petitions following oral argument. Fuller Style and Steady Floats appeal.

**ANALYSIS**

*Standard of Review*

The parties do not contest that the denial of an SSDP exemption is a land use decision. And LUPA governs our review of land use decisions. Ellensburg Cement Prods., Inc. v. Kittitas County, 179 Wn.2d 737, 742, 317 P.3d 1037 (2014); RCW 36.70C.030. This court stands "in the same position as the superior court when reviewing" the administrative decision underlying a LUPA petition. Ellensburg Cement, 179 Wn.2d at 742.

Under LUPA, the petitioner "carrie[s] the burden of establishing one of the standards set forth" in RCW 36.70C.130(1), two of which are at issue in this appeal. First, under subsection (b), the petitioner meets its burden by establishing that "[t]he land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise." RCW 36.70C.130(1)(b). When determining whether the petitioner has met its burden under subsection (b), the "[i]nterpretation of a statute is a question of law that this court reviews de novo." Ellensburg Cement, 179 Wn.2d at 743. Second, under subsection (d), the petitioner meets its burden by establishing that "'[t]he land use decision is a clearly erroneous application of the law to the facts.'" Ellensburg Cement, 179 Wn.2d at 743 (quoting RCW 36.70C.130(1)). That is, "[a] finding is clearly erroneous . . . when, although there is evidence to support it, the reviewing court on the record is left with the definite and firm conviction that a mistake has been committed." Phoenix Dev., Inc. v. City of Woodinville, 171 Wn.2d 820, 829, 256 P.3d 1150 (2011).

As stated above, the City's SMP is implemented to (1) "[p]rotect the ecological

functions of the shoreline areas[,]" (2) "[e]ncourage water-dependent uses[,]" (3) "[p]rovide for maximum public access to, and enjoyment of the shorelines[,]" and (4) "[p]reserve, enhance, and increase views of the water." SMC 23.60A.002(B). To that end, the SMA and the City's SMP are "exempt[ ] from the rule of strict construction" and must "be liberally construed to give full effect to the objectives and purposes" of the SMA. RCW 90.58.900; SMC 23.60A.014; Buechel v. Dep't of Ecology, 125 Wn.2d 196, 203, 884 P.2d 910 (1994) ("The SMA is to be broadly construed in order to protect the state shorelines as fully as possible.").

*Deference and the SMA*

As an initial matter, Fuller Style and Steady Floats contend that the City was not entitled to deference because the statute is unambiguous. We agree that the statute is unambiguous, but we further conclude that the amount of deference owed is immaterial to this disposition.

It is a longstanding principle of administrative law that administrative agencies possess special expertise with regard to "interpreting and applying . . . *ambiguous* statute[s] in harmony with the policies and goals the legislature sought to achieve." Hama Hama Co. v. Shorelines Hr'gs Bd., 85 Wn.2d 441, 448, 536 P.2d 157 (1975) (emphasis added). Under RCW 36.70.C.130(1)(b), a court will defer to a city's construction of what is consistent with its ordinances when reviewing whether an interpretation is "erroneous," and under RCW 36.70C.130(1)(d), a court will defer to a city's implementation of its comprehensive plan, such as its SMP. See, e.g., Phoenix Dev., Inc., 171 Wn.2d at 830 (giving deference to the City's construction of what is consistent with its comprehensive plan and for its implementation of the comprehensive

plan under RCW 36.70C.130(b) and (d)). However, an agency's interpretation is not "'absolutely controlling' on the court" and deference is owed only to the interpretation of ambiguous statutory language. Brown v. City of Seattle, 117 Wn. App. 781, 790, 72 P.3d 764 (2003) (quoting Hama Hama Co., 85 Wn.2d at 448).

Here, the parties disagree on the interpretation of SMC 23.60A.908, which mimics RCW 90.58.030(3)(a) and defines "development" for purposes of SSDPs. However, the City does not contend that the definition of "development" under RCW 90.58.030(3)(a)—or SMC 23.60A.908—is ambiguous. Thus, with regard to its interpretation of SMC 23.60A.908, the City is not owed deference for interpretation of an unambiguous statute. Additionally, any deference owed to the SDCI's application of the law to the facts is not determinative of the issues on appeal. Specifically, even without deference, as discussed below, we conclude that the City's determinations were consistent with the SMA and that Fuller Style and Steady Floats failed to meet their burden in establishing a violated standard under LUPA.

*Replacement FOWRs and "Substantial Development"*

Fuller Style and Steady Floats assert that the SDCI erred by concluding that SSDPs are required for each of the FOWR replacements. Specifically, Fuller Style and Steady Floats contend that the replacements do not constitute developments for which SSDPs are required. The City's determination that replacement of the existing FOWRs constitutes construction or exterior alteration is neither an erroneous interpretation of the law nor a clearly erroneous application of the law to the facts. Therefore, we affirm.

Under RCW 90.58.140, as discussed above, "[n]o development may occur on a shoreline of the state unless it is consistent with the policy of the SMA and a permit is

8

first obtained." Samuel's Furniture, Inc. v. Dep't of Ecology, 147 Wn.2d 440, 448, 54 P.3d 1194, 63 P.3d 764 (2002). Under the City's SMP, "[n]o development shall be undertaken, no shoreline modification shall be made, and no use . . . shall be established in the Shoreline District unless . . . it is consistent with the policy of the [SMA] and the regulations of th[e SMP]." SMC 23.60A.012. Moreover, the restriction on "development" within the Shoreline District "applies even if no shoreline substantial development permit is required." SMC 23.60A.012. "'Development' means a use consisting of the construction or exterior alteration of structures, . . . placing of obstructions; or any project of a permanent or temporary nature that interferes with the normal public use of the surface of the waters." SMC 23.60A.908. And all developments must obtain SSDPs, unless the City "determines the development is not substantial development or has issued an exemption." SMC 23.60A.020(A)(1).

Here, the City concluded that (1) the replacement FOWRs were not exempt under SMC 23.60A.020(C)(1) allowing for normal repair[1] and (2) the replacement FOWRs constitute substantial developments. We agree with the City's determination. First, these structures *will* involve "exterior alteration of [a] structure[ ]" because the replacement FOWRs will alter the exterior of the *original* FOWR. See SMC 23.60A.908. Development does not require that the actual construction work that alters the exterior occur within the Shoreline District. Indeed, the exterior alteration to a structure located within the shoreline by replacement with an entirely new structure is an alteration for purposes of the City's SMP.

The undisputed facts establish that each replacement structure differs

---

[1] For two years, following the SMP's effective date, the SDCI did not require replacement FOWRs to seek SSDPs.

substantially from the existing FOWR it will replace. Specifically, the three replacement FOWRs are taller, larger, and shaped differently than the pre-existing FOWRs. For instance, as shown in figure 1 below, FOWR 801 will resemble a modern home, be over 120 square feet larger and 13 feet taller, replace a boat-like structure FOWR, and include new features like an exterior spiral staircase.[2]



Figure 1: FOWR 801 Original Structure and Proposed Replacement

FOWR 811 also will resemble a modern home, be over 120 square feet larger, and replace a boat-like structure. And FOWR 873 will be 4 feet taller, 120 square feet larger, and replace a FOWR that no longer exists because it began to sink. Both FOWR 801 and 811 include an added level. Thus, these replacement FOWRs *will* involve significant exterior alterations of the pre-existing structures within the Shoreline District.

Furthermore, "[o]ur duty in conducting statutory interpretation is to 'discern and implement' the legislature's intent." Ellensburg Cement, 179 Wn.2d at 743 (quoting State v. J.P., 149 Wn.2d 444, 450, 69 P.3d 318 (2003)). And an unambiguous statute's

---

[2] Figure 1 is taken from the City's response brief in the superior court.

"plain meaning may be gleaned 'from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question.'" Ellensburg Cement, 179 Wn.2d at 743 (quoting Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 11, 43 P.3d 4 (2002)). To this end, the SMA and the City's SMP should be interpreted considering the *impact* of a development on the shoreline, not simply construction or alteration in isolation. This interpretation is in line with legislative intent: the SMA and the City's SMP are intended to address more than the ecological concerns of pollutants resulting from physical construction. Specifically, the SMA and SMP are intended to preserve and *enhance* views of the shoreline, and protect public uses. It does not matter where the construction occurs because, here, what happens at the shoreline is the same. Importing replacement FOWRs that differ in this magnitude from the original FOWRs significantly alters the shorelines, the shoreline's views, and the shoreline's uses. Additionally, the legislature enacted FOWR exemptions to "*[p]reserve* the existence and vitality of *current*, floating on-water residential uses." LAWS OF 2014, ch. 56, § 1 (emphasis added). The legislation was not intended to allow new structures that are entirely different to take the place of previously existing FOWRs. Additionally, FOWR 811 will not be moored in the same location as the pre-existing FOWR and thus changes the view and use in a new location, which permits moorage of FOWRs. Therefore, we conclude that the City's determination—that these replacement FOWRs involve construction or exterior alteration—does not leave us with the definite and firm conviction that a mistake has been committed.

Because we conclude that the replacement of these FOWRs fits within the definition of "development" as construction, exterior alteration, or obstruction of public

11

use and because Fuller Style and Steady Floats concede that the replacement FOWRs are substantial, we conclude that the City did not err in requiring SSDPs for the replacement FOWRs.

Fuller Style and Steady Floats disagree and contend that even though the replacement FOWRs are developments, they are not developments *within the shoreline*. Specifically, Fuller Style and Steady Floats argue that "as a matter of law[,] the construction of those structures outside of the shoreline district is not development for which a substantial development permit must be obtained." Fuller Style and Steady Floats, in effect, assert that the SMA and the SMP cannot have jurisdiction over the construction of their FOWRs because it is not over the Shoreline District. However, the definition of development does not state that construction or exterior alteration of a structure must be completed within the Shoreline District. Instead, it states that a "use consisting of the construction or exterior alteration [of] a structure[ ]" is a development. SMC 23.60A.908. The assertion that it must be construction *over the shoreline* lacks statutory support.

However, to support their conclusion, Fuller Style and Steady Floats distinguish Barry v. Department of Ecology, where the Shoreline Hearings Board concluded that the placement of recreational park trailers (RPTs) constituted development under the SMA. No. 12-008, 2013 WL 1294431 (Wash. Shorelines Hr'gs Bd. Mar. 14, 2013) (Findings of Fact, Conclusions of Law, and Order). Specifically, the board determined that "[p]lacing the RPTs . . . constitutes 'placing of obstructions' in the shoreline" and that the construction of stairs and the addition of "skirting and two-by-four framework . . . constructed around the bottom of the RPTs, constitute 'construction or alteration of

structures.'" Barry, 2013 WL 1294431 at *4. Fuller Style and Steady Floats argue that in Barry, the board did not conclude that the construction of the RPTs, which occurred outside of the Shoreline District, was development for purposes of SSDPs. This argument is unpersuasive. In Barry, the board neither reached—nor did it need to reach—the issue because there *was* actual construction that occurred within the Shoreline District. 2013 WL 1294431. Here, while there is no *physical construction* within the Shoreline District, it does not follow that no development will occur *within the shoreline*. Thus, we are not persuaded.

*Absolute Right*

As a final matter, Fuller Style and Steady Floats contend that there is an absolute right to replace, expand, and relocate structures. We disagree.

First, many rights that exist are subject to permitting requirements. Fuller Style and Steady Floats acknowledge that the City may regulate FOWR construction and placement. But they argue that the City and the SDCI's "authority neither compels nor allows SDCI to apply the plainly inapplicable requirements of the [SSDP] process to FOWR replacement." As an initial matter, as discussed above, the SSDP process is *not* inapplicable to the replacement of FOWRs. Additionally, Fuller Style and Steady Floats cite no authority to support a conclusion that permitting requirements are inconsistent with their rights.

Furthermore, contrary to Fuller Style and Steady Float's contentions, the results are not absurd. The City does not contend that every time a FOWR is relocated it will need an SSDP. Rather, if a relocation falls within the definition of development by, for example, substantially changing the views or obstructing normal public use where it

13

previously was not obstructed, then a permit is required. Without oversight through the permitting process, the City cannot know what the impacts of the proposed replacement FOWR will be. And without knowing the impacts, the City is unable to discern whether the replacement FOWR is consistent with the SMA and the SMP. Thus, we conclude that the City properly required SSDPs for these replacement FOWRs.

We affirm.

WE CONCUR: