# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| PAUL and JENNIFER CLARK, | No. 54370-2-II |
| Respondents, | |
| v. | |
| CITY OF BAINBRIDGE ISLAND, acting through its Department of Planning and Community Development, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, C.J. — Paul and Jennifer Clark[1] bought an undeveloped piece of property on Bainbridge Island, with the intention of building a single family home. The Clarks obtained a vegetation management permit (VMP) from the City of Bainbridge Island to clear a portion of the property. Later, the City revoked the VMP because the Clarks had overcleared the property. A hearing examiner affirmed the revocation of the VMP because the total amount of clearing on the Clarks' property exceeded the clearing limit in the VMP. On appeal of the hearing examiner's decision, the superior court reversed the hearing examiner. The City appeals the superior court's order reversing the hearing examiner's decision that affirmed the VMP revocation.

We hold that the hearing examiner's application of the terms of the VMP to the facts was clearly erroneous. Therefore, we reverse the hearing examiner's decision and remand to the hearing examiner to reconsider the revocation of the VMP.

---

[1] For clarity, we will refer to Paul and Jennifer Clark as the Clarks, but will use their first names to refer to them individually when necessary. We intend no disrespect.

FACTS

The Clarks own a 2.34 acre lot on Bainbridge Island identified as tax parcel #282502-2-035-2008. The property is zoned R-0.40, for residential use. The Clarks planned to build a single family home on the property.

The Clarks obtained two permits from the City that are at issue in this appeal.[2] On March 2, 2016, the Clarks obtained a clearing permit to remove "4-5 significant trees and some vegetation in preparation for future development." Administrative Record (AR) at 175. The clearing permit contained the following, relevant, conditions:

> Amount of timber removed shall not exceed 5000 board feet pursuant to BIMC 16.18.030.
>
> Total area of disturbance shall not exceed 7000 square feet.
>
> . . . .
>
> No construction activities or installation of permanent roadways or structures is authorized by the approval of this permit application.
>
> . . . .
>
> No vegetation removal beyond that described on the application form provided by the applicant is approved.

AR at 175. The permit application designated the tree removal in order to "get the property ready for a driveway and well." AR at 168.

---

[2] The Clarks assert that there are actually four permits that are relevant to this appeal: the clearing permit, the VMP, a building permit, and a stormwater permit. However, neither the building permit nor the stormwater permit are in the record before this court. Therefore, we do not consider the Clarks' arguments regarding the building permit and the stormwater permit. *See Sepich v. Dep't of Labor & Indus.*, 75 Wn.2d 312, 316, 450 P.2d 940 (1969) (on review, courts cannot consider matters outside the record).

On March 9, 2016, the Clarks applied for a VMP. The purpose of the VMP was to "remove trees [and] stumps in order to prepare land for well, septic, and house." AR at 11. The City approved the Clarks' VMP. The VMP included the following conditions:

1. A separate building permit will be required for the construction of any structures, buildings, roadways, driveways or utilities on this site.
2. This approval extends to the clearing of vegetation within the "Revised Garden Area," "Haul Route," and homesite area represented on the revised site plan submitted and date stamped July 12, 2016 (included as "Attachment B" of staff report).

. . . .

4. Total clearing under this approval shall not exceed 20,000 square feet of area.

AR at 40. The July 12, 2016, site plan showed a specific yard/garden area, a house, and a haul route between the two areas. The proposed area to be cleared on the site plan was 17,000 square feet.

On October 6, 2016, the City revoked the Clarks' VMP.

The Clarks appealed the decision revoking the VMP. A public hearing was held on the Clarks' appeal on April 26, 2017. Following a hearing, the hearing examiner made the following findings of fact:

11. The VMP was revoked by the City on October 6, 2016, with a followup [Stop Work Order] issued shortly thereafter. While potential additional compliance problems were identified in the course of review, the primary basis for the revocation was a determination that the appellants had greatly exceeded the 20,000 clearing limit imposed by the permit. . . .

12. The October 25, 2016, survey showed a total area of clearing on the Clark property of 33,278 square feet, with 8321 square feet of the total attributed to the initial clearing permit. These figures were not challenged by the appellants and are, indeed, the only indisputably reliable clearing figures in the record. A 2012 aerial

photo upon which the GPS survey has been overlaid shows the entire cleared area to have been densely forested prior to disturbance.

13.     Mr. Clark contended that the 20,000 square feet total of clearing contemplated by the July 13, 2016, VMP was understood by both himself and the City to be in addition to the 7000 square feet of disturbance previously authorized by the March 2, 2016, clearing permit, thus creating a total authorization for 27,000 square feet of site clearing. Other than a few isolated phrases that arguably might support multiple interpretations, the record as a whole supports a finding that the City consistently intended the 20,000 square foot limit to apply to the project as a whole and tried to communicate that understanding to Mr. Clark.

AR at 243-44.

The hearing examiner concluded that the Clarks violated the VMP:

Since the undisputed evidence is that the Clarks cleared 33,278 square feet of forest vegetation, exceeding the maximum legally permissible amount by a rather egregious 12,892 square feet, the City's revocation of the VMP was based on a plain violation of the permit's conditions and thus fully warranted under BIMC 16.22.097.A(2).

AR at 246. The hearing examiner also concluded that the Clarks violated the scope of the VMP

that was issued based on the July 12, 2016, site plan:

Finally, one of the basic rules of the land use permitting game is that the scope of an applicant's approval is limited to the development actually submitted for review. The Examiner is aware of no legal authority supporting the proposition that an applicant who has requested and received approval for Proposal A has a right to build a larger Proposal B simply because it is possible to read a permit condition expansively to justify a larger project. But that is precisely what Mr. Clark is seeking through this appeal. The proposal described in his environmental checklist entails 17,000 square feet of clearing, as does the proposal depicted on his revised site plan approved by the City. Mr. Clark now argues, however, that he is entitled to at least 27,000 square feet of clearing because it is possible to read the VMP condition no. 4 – in complete isolation from his application, checklist, site plan, and the other permit conditions – as creating a new and bigger development grant. This can only be regarded as a frivolous contention.

AR at 247.

The Clarks filed a motion for reconsideration. The hearing examiner denied the Clarks' motion for reconsideration but modified certain findings of fact in the decision that are not relevant to this appeal.

The Clarks filed a petition for review of the hearing examiner's decision under the land use petition act (LUPA), chapter 36.70C RCW. The superior court granted the Clarks' LUPA petition and reversed the hearing examiner's decision. The superior court ruled that the hearing examiner's decision was erroneous, vacated the decision, and reinstated the VMP. The City appeals.

## ANALYSIS

### A.    FINALITY OF THE CLARKS' PERMITS

Both parties agree that the Clarks' VMP was not appealed and, therefore, is final. However, the parties appear to disagree on the effect of the finality of the permit. As explained below, because the VMP is final, it limits the scope of our review to whether the terms of the VMP were violated. Therefore, as an initial matter, we clarify the effect of the finality of the VMP.

Under RCW 36.70C.040(3), a LUPA petition challenging a land use decision must be filed within 21 days or it is barred. If a LUPA petition is not timely filed, the land use decision becomes final and valid once the opportunity to challenge the decision has passed. *Durland v. San Juan County*, 174 Wn. App. 1, 13, 298 P.3d 757 (2012). "Furthermore, a party may not collaterally challenge a land use decision for which the appeal period has passed via a challenge to a subsequent land use decision." *Id*. These principles even apply to illegal decisions that are not timely challenged. *Habitat Watch v. Skagit County*, 155 Wn.2d 397, 407, 120 P.3d 56 (2005).

Here, it is undisputed that the VMP was not challenged within the 21 day period by the filing of a LUPA petition. Therefore, the VMP is final and valid. *Durland*, 174 Wn. App. at 13. This is true even if the terms of the VMP are invalid or illegal. *Habitat Watch*, 155 Wn.2d at 407. Neither the City nor the Clarks can use the permit revocation action as a mechanism to collaterally attack the terms of the VMP. *Durland*, 174 Wn.2d at 13.

Thus, our review is limited to the propriety of the VMP revocation. And because the VMP is final, the relevant issue in determining whether the VMP revocation was proper is whether the Clarks' actions violated the terms of the VMP.[3]

B.    REVOCATION OF THE CLARKS' VMP

The City and the Clarks argue about whether the superior court properly reversed the hearing examiner. However, "[t]his court stands 'in the same position as the superior court when reviewing' the administrative decision underlying a LUPA petition." *Fuller Style, Inc. v. City of Seattle*, 11 Wn. App. 2d 501, 507, 454 P.3d 883 (2019) (quoting *Ellensburg Cement Prods., Inc. v. Kittitas County*, 179 Wn.2d 737, 742, 317 P.3d 1037 (2014)). Therefore, we review the hearing

---

[3] Because of the finality of the VMP, many of the parties' arguments are improper collateral attacks on the VMP. For example, arguments regarding the correct interpretation of the maximum amount of clearing allowed under the municipal code amounts to a collateral attack on the VMP to the extent that such an interpretation would change the terms of the VMP. Because the VMP is final, the maximum amount of clearing on the Clark property is determined by the terms of the VMP, not by the municipal code. This is true even if the VMP allowed more clearing than is permitted under the municipal code. Both parties are bound by the amount of clearing set forth in the VMP. *See Habitat Watch*, 155 Wn.2d 407. Similarly, whether the municipal code allows the permits to be read cumulatively is superfluous to the hearing examiner's decision that the Clarks violated the VMP.

examiner's decision, not the superior court's decision. *Milestone Homes, Inc. v. City of Bonney Lake*, 145 Wn. App. 118, 125, 186 P.3d 357 (2008); *see also* RCW 36.70C.020(2), .130(1).

The Clarks assert three grounds for reversing the hearing examiner's decision. First, the Clarks argue that the hearing examiner's decision is based on an incorrect interpretation of the law. Second, the Clarks argue that the hearing examiner's decision was clearly erroneous. Third, the Clarks argue that the hearing examiner's decision violates their constitutional rights. We agree that the hearing examiner's decision was a clearly erroneous application of the law to the facts. Because we reverse on that ground, we do not address the Clarks' additional arguments.

1.      LUPA Standards of Review

LUPA governs judicial review of land use decisions. *Douglass Properties II, LLC v. City of Olympia*, 16 Wn. App. 2d 158, 164, 479 P.3d 1200, 1204 (2021). We will only grant relief when the party challenging the land use decision has established one of the six statutory standards in RCW 36.70C.130(1).[4] The standards for granting relief in RCW 36.70C.130(1) are:

> (a) The body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless;
> (b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;

---

[4] The Clarks argue that the City bears the burden on appeal because the City's action was punitive. *Post v. City of Tacoma*, 167 Wn.2d 300, 310-11, 217 P.3d 1179 (2009). But the case the Clarks rely on is inapplicable because it applies to civil infractions and claims for damages or compensation, which are not governed by LUPA. *Id* at 311-12. Here, the City did not seek any remedies for the violation of the VMP, the City only revoked the VMP.

The Clarks also argue that the revocation allows the City to seek penalties and remediation for the violation, but the City did not impose penalties or remediation. This case addresses only the revocation of the VMP, which is governed by LUPA.

(c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;

(d) The land use decision is a clearly erroneous application of the law to the facts;

(e) The land use decision is outside the authority or jurisdiction of the body or officer making the decision; or

(f) The land use decision violates the constitutional rights of the party seeking relief.

Here, the relevant standard is RCW 36.70C.130(1)(d). Under RCW 36.70C.130(1)(d), application of the law to the facts is clearly erroneous when this court is "left with 'the definite and firm conviction that a mistake has been committed'" *Douglass Properties II, LLC*, 16 Wn. App. 2d at 165 (quoting *Phoenix Dev., Inc. v. City of Woodinville*, 171 Wn.2d 820, 828-29, 256 P.3d 1150 (2011)).

2. Clearly Erroneous

The Clarks argue that the hearing examiner's decision was clearly erroneous because the VMP was a separate permit from the other permits issued to the Clarks. Further, the Clarks argue that it was clearly erroneous to include already completed work in the scope of the VMP. We agree.

The two relevant conditions in the VMP state,

2. This approval extends to the clearing of vegetation within the "Revised Garden Area." "Haul Route," and homesite area represented on the revised site plan submitted and date stamped July 12, 2016 (included as "Attachment B" of staff report).

. . . .

4. Total clearing under this approval shall not exceed 20,000 square feet of area.

AR at 40. The explicit terms of conditions 2 and 4 in the VMP allow up to 20,000 square feet of clearing for the garden, haul route, and homesite areas designated in the revised site plan. The VMP does not reference or incorporate the clearing permit that had already been obtained. The City asserts that the area that had already been cleared under the clearing permit was included in the designated areas on the revised site plan. However, because that work had already been completed and the work designated in the clearing permit was for a well and a driveway, not a garden area, haul route, and homesite, it was clearly erroneous for the hearing examiner to conclude that the VMP clearing limits encompassed the total clearing limit on the property, including clearing that had already been completed under the clearing permit.

The undisputed evidence before hearing examiner shows that 8,321 square feet of clearing was attributed to the clearing permit. The total amount of clearing identified on the property was 33,278 square feet. Therefore, 24,957 of clearing is attributed to the VMP. The hearing examiner concluded that the Clarks violated the VMP permit by an "egregious 12,892 square feet," and therefore, the City's revocation of the VMP was warranted. AR at 246. However, because the clearing permit and the VMP should have been treated separately, the hearing examiner erroneously applied the law to the facts by looking at the clearing on the property as a whole (33,278 square feet) rather than the clearing specifically performed under the VMP (24,957 square feet).

Because the hearing examiner's application of the law to the facts was clearly erroneous, we reverse the hearing examiner's decision affirming the VMP revocation and remand for the hearing examiner to consider whether the specific terms of the VMP were violated. Specifically,

whether the area cleared for the garden area, haul route, and homesite exceeded the limit allowed by the terms of the VMP.[5]

We reverse the hearing examiner's decision affirming the VMP revocation and remand for further proceedings consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, C.J.
Lee, C.J.

We concur:

_____
Worswick, J.

_____
Veljacic, J.

---

[5] We note that the City took no action when the Clarks cleared 8,321 square feet under the clearing permit, which had a limit of 7,000 square feet.  Here, the City never argued that an approximately 5,000 square feet of excess clearing should have prompted a revocation of the VMP; thus, the hearing examiner was not afforded the opportunity to determine whether an approximately 5,000 square feet violation constituted an "egregious" violation that "greatly exceeded" the limit in the VMP.  AR at 243, 246.