IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

WASHINGTON STATE DEPARTMENT )
OF TRANSPORTATION, )
                              )
           Respondent, )
                              )
        v. )
                              )
CITY OF SEATTLE, )
                              )
           Appellant. )

No. 72719-2-I

PUBLISHED OPINION

FILED: February 29, 2016

SCHINDLER, J. — The Seattle Municipal Code exempts "[d]evelopment undertaken by the Washington State Department of Transportation [(WSDOT)] in state highway right-of-way" from the requirement to obtain a grading permit.[1] Nonetheless, the city of Seattle (City) took the position that WSDOT must obtain grading permits for the construction on temporary easements of work bridges necessary to access and construct the West Approach Bridge portion of the State Route 520 floating bridge project. Because the City erroneously interpreted and applied the exemption, we affirm the decision to grant the land use petition and invalidate the grading permits.

---

[1] SMC 22.170.060(B)(14).

FACTS

State Route 520 (SR-520) is designated by the legislature as a highway of statewide significance.[2] SR-520 begins at the Interstate 5 (I-5) junction in Seattle and runs east across Lake Washington and the Evergreen Point Floating Bridge to State Route 202 in Redmond. Before beginning work on the SR-520 Evergreen Point Floating Bridge project, WSDOT obtained environmental permits, including a shoreline substantial development permit and a conditional use permit to construct the West Approach Bridge.

The Washington State Department of Transportation (WSDOT) began construction on the floating bridge replacement project in April 2012. The project replaces the existing floating bridge and the connection to I-5 and the Montlake Boulevard interchange. The West Approach Bridge is an elevated structure that connects the new floating bridge to the Montlake Boulevard interchange in Seattle.

The West Approach Bridge crosses over wetland areas, shoreline areas, and the Washington Park Arboretum. The construction of work bridges on adjacent property located near shallow water areas was necessary to access and construct the West Approach Bridge and for demolition purposes. The "Environmental Impact Statement" describes the need to construct the work bridges "in four general areas along the project alignment: Portage Bay, Union Bay, the west approach in Lake Washington, and the east approach in Lake Washington."

> Work bridges are proposed in shallow-water areas where work from barges is not possible. Each of these shallow-water areas is expected to need two construction work bridges, one on either side (north and south) of the new alignment. Work bridges are expected to also be used for demolition purposes. There will be periods when both the north and south

---

[2] RCW 47.06.140(1); RCW 47.17.720.

work bridges are functional, depending on construction requirements. The typical layout of a construction work bridge consists of about a 30-foot wide structure, with heavy timber decking supported by steel beams . . . . Work bridges would be built on driven piles installed from a mobile crane.

Construction of work bridges would be accomplished from a crane that starts out on land behind a temporary wall on a pad prepared at the edge of the water. The crane swings out and starts driving piles in the water for the first pile bent. Pile installation for work bridges would be conducted using a combination of vibratory and impact pile-driving (a single crane can be fitted with either a vibratory or impact hammer, depending on the need). After all piles for each bent are driven, they are cut off at the same elevation. Steel cap beams are set on top of the piles to complete the bent. Support beams are welded from one bent to the next and timber deck panels are then bolted to the support beams. After the deck span is in place, the crane is advanced out onto the span and the operation continues until all the bents and work bridge spans are in place.

In 2013, WSDOT acquired temporary easements for the adjacent property needed to construct the work bridges for the West Approach Bridge from the city of Seattle (City), Washington State Department of Natural Resources, and the University of Washington. The temporary easements give WSDOT the right to use the property as a "work area for adjacent highway construction-related activities" and "all necessary machinery and equipment." For example, the temporary easement with the City provides, in pertinent part:

TEMPORARY EASEMENT

State Route 520, SR 5 Vicinity to Evergreen Point Bridge

The Grantor(s), The City of Seattle, Department of Parks and Recreation, for and in consideration of the sum of TEN AND NO/100 ($10.00) Dollars, and other valuable consideration, convey(s) and grant(s) unto the State of Washington, acting by and through its Department of Transportation, and its assigns, Grantee, under the imminent threat of the Grantee's exercise of its right of Eminent Domain, the right, privilege and easement over, upon, and across the hereinafter described lands for the purpose of providing a work area for adjacent highway construction-related activities and operating all necessary machinery and equipment in,

on, over and across the Temporary Easement Area (but not for the purposes of constructing any permanent improvements thereon).

> The term of this Temporary Easement shall be an 181 day period (Construction Period) which may occur anytime between January 1, 2014 and December 31, 2016 (Termination Date) but in no event shall the Construction Period extend beyond December 31, 2016. The Construction period shall commence upon initiation of Grantee's construction within the Easement Area.

On February 14, 2014, the City of Seattle Department of Planning and Development (DPD) issued a correction notice to WSDOT for the "West Approach (Montlake to Floating Bridge)." The notice states that before issuing a master use permit for the project, WSDOT must obtain grading permits to construct the work bridges on the temporary easements because the "property . . . is not considered as right-of-way." The notice also states a "grading permit will be required if the work impacts or encroaches upon [the] property, even if the work begins in WSDOT right-of-way." The notice of correction states that the requirement to obtain grading permits "includes shoring elements needed to support excavations for constructing staging areas and proposed structures."

WSDOT and the City disagreed about whether the City had the authority to require WSDOT to obtain grading permits for construction of the work bridges on the adjacent temporary construction easements that were necessary to access and construct the West Approach Bridge. However, to avoid project delays, WSDOT obtained grading permits from the City "under protest." The April 28, 2014 letter from WSDOT to the City states, in pertinent part:

> As this issue is unresolved, WSDOT is moving forward in obtaining grading permits for these areas to prevent risk of project delays.

WSDOT will be obtaining the grading permits from DPD under protest on the following grounds:

1)  WSDOT maintains that it holds plenary authority to exercise all powers necessary for the construction of state highways as provided by RCW 47.01.260 and to perform all work in accordance with WSDOT policies, practices, and standards without need of local permits.

2)  WSDOT maintains that State [right-of-way] includes limited access facilities and temporary construction easements necessary to accomplish the purpose of limited access facilities pursuant to RCW 47.52.010 and RCW 47.12.010.

In May, WSDOT submitted applications to the City for grading permits for construction on the temporary easements of the work bridges needed to access and construct the West Approach Bridge. WSDOT submitted a right-of-way plat for the SR-520 Evergreen Point Floating Bridge project with each permit, "Plat of Right of Way for State Route No. 520 Evergreen Point Bridge." The Plat of Right of Way for each permit identifies the location of the "existing SR 520," the "proposed SR 520," and the proposed acquisition and location of the temporary construction easements.

On May 30, the City issued grading permits for construction of the "520 West Approach." The permits describe the construction work as follows:

Grading and site work in support of the West Approach of the SR 520 Bridge Replacement and HOV[3] Project. Work includes construction of a stormwater facility, shared use path, parking and drainage facilities, landscaping, and temporary work access structures in the [right-of-way] and temporary easement areas, per plan.

On June 17, WSDOT filed a "Petition for Review of Grading Permits Pursuant to RCW 36.70C (Land Use Petition Act)." WSDOT asserted the requirement to obtain grading permits for the work bridges is contrary to the express language of the grading code exemption and the exclusive statutory authority of WSDOT to construct state

_____
[3] High-occupancy vehicle.

5

highway right-of-way projects. WSDOT requested the court invalidate the grading permits.

The land use petition alleged the City erroneously interpreted the exemption, and the requirement to obtain grading permits for construction of the work bridges for the "SR 520 West Approach Bridge North Project" on the temporary easements was an erroneous application of the law to the facts. The land use petition asserts, in pertinent part:

> . . . Seattle Municipal Code [(SMC)] section 22.170.060 sets out the requirements for grading permits. This section states that grading permits are not required for certain activities, including "[d]evelopment undertaken by the Washington State Department of Transportation in state highway right-of-way that complies with standards established pursuant to Chapter 173-270 Washington Administrative Code, the Puget Sound Highway Runoff Program; . . . ." SMC 22.170.060.B.14. The SR 520 West Approach Bridge North Project is in compliance with the Puget Sound Highway Runoff Program, and the work will be undertaken within state highway right-of-way.
>
> . . . .
> . . . WSDOT has acquired the necessary right-of-way to build the SR 520 West Approach Bridge North Project. Most of this property has been acquired by the State in fee. However, some areas will be needed only during the construction period and were acquired as temporary construction easements. These areas will be used during the construction period, and when construction is complete their control and ownership will revert to the underlying landowner. All of this property is treated by WSDOT as state right-of-way and is delineated on WSDOT's right-of-way plans as such. The underlying landowners of the easement areas are the University of Washington, Washington Department of Natural Resources, and the City of Seattle Parks and Recreation Department.
>
> . . . .
> . . . The City's requirement for grading permits for portions of the SR 520 West Approach Bridge North Project is in conflict with this code provision. The City has erroneously interpreted SMC 22.170.060.B.14 in concluding that the portions of the project that are on temporary construction easements are not "in state highway right-of-way."

WSDOT argued that although it had obtained grading permits, the land use petition was not moot because the court could provide effective relief by invalidating the

6

grading permits. WSDOT also argued the petition presented an issue of continuing and substantial public interest and an authoritative determination would resolve the ongoing dispute over whether state highway construction projects are subject to the SMC, and the issue is likely to recur.[4]

The City agreed the land use petition was not moot and interpretation of the exemption was a question of law. The City argued a grading permit is required for construction outside a state highway right-of-way. The City defined "right-of-way" as "a strip of land platted, dedicated, condemned, established by prescription or otherwise legally established for the use of pedestrians, vehicles, or utilities." The City asserted that because construction on the temporary easements is not part of the highway right-of-way, the grading code exemption did not apply.

The court entered an order granting the land use petition. The court found the "matter is not moot" because an authoritative determination would provide future guidance and the parties agree the matter "is likely to recur."

> This matter is not moot as a result of WSDOT having already obtained the grading permits. The parties agree that this is a matter that is likely to recur. A decision in WSDOT's favor would provide relief to WSDOT in that if the permits are not required, it removes the possibility of conflicting City and State grading standards being applied to WSDOT's grading activities on the SR 520 project.

The court ruled the City erroneously interpreted the grading code exemption requiring WSDOT to obtain grading permits for the work bridges needed to access and construct the West Approach Bridge. The court concluded development in "state highway right-of-way" means "any land needed for highway purposes, including temporary construction easements needed for highway construction." The court

---

[4] WSDOT pointed out that if the court agreed the City erroneously interpreted the exemption to obtain grading permits, it need not reach the question of preemption.

concluded only "WSDOT has statutory authority to determine what constitutes state highway right of way pursuant to RCW 47.01.260 and RCW 47.12.010."

> Seattle's decision to require and to issue grading permits for portions of the SR 520 West Approach Bridge North project was an erroneous interpretation of the Seattle Grading Code, SMC 22.170. The grading code exempts development in "state highway right of way" from its permitting requirements. SMC 22.170.060.B.14. "State highway right of way" means any land needed for highway purposes, including temporary construction easements needed for highway construction. WSDOT has statutory authority to determine what constitutes state highway right of way pursuant to RCW 47.01.260 and RCW 47.12.010.

The court concluded the decision of the City to require WSDOT to obtain grading permits was an erroneous application of the law to the facts.

> Seattle's interpretation of its grading code as requiring permits for portions of the SR 520 project was an erroneous application of the law to the facts, for the reasons noted . . . above and in light of the practical complications of having inconsistent standards applicable to a single state highway construction contract. Although the Court makes no finding regarding whether such inconsistencies are established by the record in this case, the grading permit requirement could in other circumstances result in conflicting standards being applied to a single state highway construction contract. It is important for the state to have authority over all of the property needed for a highway construction project.

The court also ruled, "[S]tate law preempts the application of Seattle's grading permit requirements to state highway construction projects."

The court granted WSDOT's request to invalidate the grading permits.

> Based on the foregoing conclusions, it is hereby ORDERED that WSDOT's request for relief is GRANTED. The grading permits issued by the City of Seattle for the SR 520 West Approach Bridge project are void as having been issued contrary to what constitutes "state highway right of way" under Seattle's grading code, and because Seattle's authority to require grading permits for the SR 520 project is preempted by state law.

8

ANALYSIS

The City contends the court erred in rejecting its interpretation of the grading code exemption and concluding the decision to require WSDOT to obtain grading permits to construct work bridges on the temporary easements was an erroneous application of the law to the facts.

As a preliminary matter, we address whether the case is moot. As a general rule, we will dismiss a case as moot if we can "no longer provide effective relief." Orwick v. City of Seattle, 103 Wn.2d 249, 253, 692 P.2d 793 (1984). Because WSDOT seeks to affirm the decision to invalidate the grading permits, we can provide effective relief. Nonetheless, we also conclude the exception to the mootness doctrine is met. An authoritative determination will provide future guidance, and the interpretation of the grading code exemption for WSDOT development in state highway right-of-way presents an issue of continuing and substantial public interest that is likely to recur. Westerman v. Cary, 125 Wn.2d 277, 286, 892 P.2d 1067 (1994).

Judicial review of land use decisions is governed by the Land Use Petition Act (LUPA), chapter 36.70C RCW. RCW 36.70C.020(2); Griffin v. Thurston County Bd. of Health, 165 Wn.2d 50, 54, 196 P.3d 141 (2008). An appellate court stands in the same position as the superior court and applies the standards set forth in RCW 36.70C.130(1) to the administrative record. Griffin, 165 Wn.2d at 54-55; Isla Verde Int'l Holdings, Inc. v. City of Camas, 146 Wn.2d 740, 751, 49 P.3d 867 (2002); King County Dep't of Dev. & Envtl. Servs. v. King County, 177 Wn.2d 636, 642-43, 305 P.3d 240 (2013). LUPA allows a court to grant relief only if the party seeking relief carries the burden of

9

establishing that one of the six standards under RCW 36.70C.130(1)(a) through (f) has been met.

We review de novo whether the land use decision is an erroneous interpretation of the law under RCW 36.70C.130(1)(b). Phoenix Dev., Inc. v. City of Woodinville, 171 Wn.2d 820, 828, 256 P.3d 1150 (2011). A clearly erroneous application of the law to the facts under RCW 36.70C.130(1)(d) is present when "the reviewing court on the record is left with the definite and firm conviction that a mistake has been committed." Phoenix, 171 Wn.2d at 828-29; Whatcom County Fire Dist. No. 21 v. Whatcom County, 171 Wn.2d 421, 426-27, 256 P.3d 295 (2011).

The Seattle grading code, SMC 22.170.060(A)(1)(d), requires a grading permit for changes to existing grade or grading if "excavation, filling, and other movement of earth material exceeds 500 cubic yards." However, the grading code expressly exempts construction by WSDOT for state highway right-of-way subject to compliance with the Puget Sound Runoff Program.[5] SMC 22.170.060(B)(14) states, in pertinent part:

> Exemptions. A grading permit is not required for the activities listed in subsection 22.170.060.B.
>
> . . . .
>
> 14. Development undertaken by the Washington State Department of Transportation in state highway right-of-way that complies with standards established pursuant to Chapter 173-270 Washington Administrative Code, the Puget Sound Highway Runoff Program.[6]

---

[5] There is no dispute the WSDOT SR-520 construction project complied with the standards for the Puget Sound Runoff Program and the WSDOT "Highway Runoff Manual." The Puget Sound Runoff Program requires WSDOT to comply with regulations in the Highway Runoff Manual. WAC 173-270-030(1) states that "WSDOT shall use the highway runoff manual to direct stormwater management for its existing and new facilities and rights of way in the Puget Sound basin."

[6] Emphasis added.

The interpretation of a municipal ordinance is a question of law reviewed de novo. Ellensburg Cement Prods., Inc., v. Kittitas County, 179 Wn.2d 737, 743, 317 P.3d 1037 (2014). We construe a municipal ordinance according to the rules of statutory interpretation. Ellensburg Cement, 179 Wn.2d at 743.

Our objective is to ascertain and give effect to legislative intent. Ellensburg Cement, 179 Wn.2d at 743. We look first to the text of a statute to determine its meaning. Griffin, 165 Wn.2d at 55. When the meaning of statutory language is plain on its face, the court must give effect to that plain meaning as an expression of legislative intent. City of Spokane v. Spokane County, 158 Wn.2d 661, 673, 146 P.3d 893 (2006). If the plain language is subject to only one interpretation, our inquiry is at an end. Lake v. Woodcreek Homeowners Ass'n, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010).

When interpreting a statute, "we 'must not add words where the legislature has chosen not to include them.' " Lake, 169 Wn.2d at 526 (quoting Rest. Dev., Inc. v. Cananwill, Inc., 150 Wn.2d 674, 682, 80 P.3d 598 (2003)). We must construe the statute " 'so that all the language used is given effect, with no portion rendered meaningless or superfluous.' " Rapid Settlements, Ltd. v. Symetra Life Ins. Co., 134 Wn. App. 329, 332, 139 P.3d 411 (2006) (quoting Prison Legal News, Inc. v. Dep't of Corr., 154 Wn.2d 628, 644, 115 P.3d 316 (2005)). We must also avoid an interpretation that results in unlikely or strained consequences. Broughton Lumber Co. v. BNSF Ry., 174 Wn.2d 619, 635, 278 P.3d 173 (2012). We consider a provision "within the context of the regulatory and statutory scheme as a whole." ITT Rayonier, Inc. v. Dalman, 122 Wn.2d 801, 807, 863 P.2d 64 (1993) (cited in Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 10-11, 43 P.3d 4 (2002)).

The City concedes neither the SMC nor the grading code defines "[d]evelopment undertaken by [WSDOT]" or "state highway right-of-way."[7] The City interprets the exemption as applying only to "a strip of land, any portion of which is open as a matter of right to public vehicular travel." The City asserts that because the temporary construction easements are not open to public vehicle travel, the grading code exemption does not apply. WSDOT asserts the City's interpretation does not give effect to all of the language of the exemption, state law, or the exclusive authority of WSDOT to construct and acquire property for the construction of state highway right-of-way. We agree with WSDOT.

Under RCW 36.70C.130(1)(b), a court may overturn a land use decision that is "an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise." This standard does not require a court to give complete deference, but rather, " 'such deference as is due.' " Ellensburg Cement, 179 Wn.2d at 753 (quoting RCW 36.70C.130(1)(b)). We do not defer to an interpretation that conflicts with the plain language of the grading code exemption. Waste Mgmt. of Seattle v. Utils. & Transp. Comm'n, 123 Wn.2d 621, 628, 869 P.2d 1034 (1994)).

The City's interpretation does not give effect to the plain language and is a narrow and strained interpretation of the grading code exemption. The City uses the definition of "right-of-way" from the land use code and the definition of "highway" from the traffic code to interpret the language of the grading code exemption to mean only "a strip of land, any portion of which is open as a matter of right to public vehicular travel."

---

[7] SMC 22.170.060(B)(14).

The land use code, SMC 23.84A.032, defines "right-of-way" as "a strip of land platted, dedicated, condemned, established by prescription or otherwise legally established for the use of pedestrians, vehicles or utilities." However, the land use code expressly states that "[t]he definitions in this chapter provide the meanings of terms used in this title." SMC 23.84A.001(A).[8] The traffic code addresses the use of a highway for vehicular travel. The traffic code defines "highway" as "the entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel." SMC 11.14.245.

The cases the City cites in support of its interpretation are also inapposite. In Kalinowski v. Jacobowski, 52 Wash. 359, 362-64, 100 P. 852 (1909), the court concluded the reference to a "right of way" in a deed established an easement across the servient estate. In Ryan Mercantile Co. v. Great Northern Railway, 294 F.2d 629, 632 (1961), the Ninth Circuit interpreted a lease agreement that granted a "right of way" and held that the "leased premises" included the right-of-way.

The City's interpretation is contrary to the plain language and intent of the grading code exemption, gives no meaning to the language that exempts "[d]evelopment undertaken by the Washington State Department of Transportation in state highway right-of-way," and ignores state law.[9] The only interpretation that gives effect to all of the language of the exemption recognizes the definition of "state highway right-of-way" in Title 47 RCW and the exclusive authority of WSDOT to develop and acquire property for state highway right-of-way, including temporary construction easements that are integral to the construction of the SR-520 West Approach Bridge.

---

[8] Emphasis added.
[9] SMC 22.170.060(B)(14) (emphasis added).

13

Long-standing precedent and state law establish WSDOT is the only agency authorized to site, design, construct, and acquire land for construction of state highways under Title 47 RCW, "Public Highways and Transportation." RCW 47.01.260(1); Deaconess Hosp. v. Wash. State Highway Comm'n, 66 Wn.2d 378, 393, 403 P.2d 54 (1965) (as "an organ of government," WSDOT comprises the only agent of government charged by law with carrying out the state's highway program and is vested with the authority to build and maintain highways). RCW 47.01.260(1) states, in pertinent part:

> The department of transportation shall exercise all the powers and perform all the duties necessary, convenient, or incidental to the planning, locating, designing, constructing, improving, repairing, operating, and maintaining state highways, including bridges and other structures, culverts, and drainage facilities and channel changes necessary for the protection of state highways.[10]

Under state law, "right-of-way" is not limited to "a strip of land, any portion of which is open as a matter of right to public vehicular travel." RCW 47.14.020(1) broadly defines "right-of-way" to mean "the area of land designated for transportation purposes."[11] RCW 47.14.020 states that the definition of right-of-way shall "apply throughout this chapter." Throughout Title 47 RCW, "right-of-way" is used to refer to areas outside a traveled roadway. See e.g., RCW 47.12.010 (area needed to gain access to any state highway); RCW 47.04.040 (ditches and drainage facilities).

RCW 47.12.010 gives WSDOT the authority to acquire "any lands or interests in land for a right-of-way for any state highway" including right-of-way temporary easements. Under RCW 47.12.010, the "right-of-way to reach such property and gain

---

[10] Emphasis added.
[11] Emphasis added.

14

access" includes the right to acquire property needed to access construction of state highways. RCW 47.12.010 states, in pertinent part:

> Whenever it is necessary to secure any lands or interests in land for a right-of-way for any state highway, or for the drainage thereof or construction of a protection therefor . . . , or for any site for the erection upon and use as a maintenance camp, of any state highway, or any site for other necessary structures or for structures for the health and accommodation of persons traveling or stopping upon the state highways of this state, or any site for the construction and maintenance of structures and facilities adjacent to, under, upon, within, or above the right-of-way of any state highway for exclusive or nonexclusive use by an urban public transportation system, or for any other highway purpose, together with right-of-way to reach such property and gain access thereto, the department of transportation is authorized to acquire such lands or interests in land in behalf of the state.[12]

Under state law, WSDOT has the discretion to obtain temporary easements for purposes of construction rather than acquiring the property in fee. "Neither statute nor decisional law of this state requires a condemnor to acquire a greater interest in property than that which is required for the use of the facilities for which condemnation is sought." Municipality of Metro. Seattle v. Kenmore Props., Inc., 67 Wn.2d 923, 929, 410 P.2d 790 (1966); see also In re Condemnation Petition of Seattle Popular Monorail Auth., 155 Wn.2d 612, 636, 121 P.3d 1166 (2005) (condemnor determined fee interest was necessary for the construction, operation, and maintenance of the monorail station on property and for related construction staging and development).

The requirement to obtain grading permits for work bridges to access and construct the SR-520 West Approach Bridge is also a clearly erroneous application of the grading code exemption to the facts. The undisputed record establishes

---

[12] Emphasis added.

construction of the work bridges on the temporary easements was necessary to access and construct the SR-520 West Approach Bridge.

We affirm the decision to grant the land use petition and invalidate the grading permits.[13]

WE CONCUR:

---

[13] Accordingly, we need not address the question of preemption and the Growth Management Act, chapter 36.70A RCW.