IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| SCOTT AND CATHLEEN BRUESKE, | ) | |
| husband and wife, | ) | No. 39001-2-III |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| CHELAN COUNTY, a Washington | ) | |
| municipal corporation, | ) | |
| | ) | |
| Respondent. | ) | |

STAAB, J. — Cathleen and Scott Brueske (the Brueskes) applied to Chelan County

(County) for a permit to build an addition (proposed addition) to their already approved

single-family residence which was still under construction. The building official denied

the application. The hearing officer affirmed the denial after concluding that the proposed

addition qualified as either three accessory dwelling units under the Washington State

Residential Code (Residential Code), or a commercial sleeping unit under the

Washington State Building Code (Building Code), both of which were prohibited by the

applicable zoning ordinances.

On appeal, the Brueskes challenge the hearing examiner's conclusion that their

proposed addition should be classified as either accessory dwelling units or commercial

sleeping units. They contend that their proposed addition does not qualify as dwelling units because the units do not contain kitchens. Additionally, they argue that the units do not qualify as sleeping units because the addition is part of their dwelling. The County now concedes that the hearing examiner erred in concluding that the proposed addition qualifies as three dwelling units, but argues that the error is harmless because the hearing examiner correctly concluded that the proposed addition also qualifies as a commercial sleeping unit under the Building Code.

We hold that the building official and the hearing examiner erroneously interpreted the law by concluding that the Brueskes' proposed addition should be classified as sleeping units under the Building Code. Instead, the proposed addition was an addition to, and part of the Brueskes' dwelling. We reverse the hearing examiner's decision affirming the building official's denial of the Brueskes' permit application and remand for further proceedings.

## BACKGROUND

In 2019, the Brueskes submitted a building permit application (BP-190282) to the County for a single-family residence near Leavenworth, Washington. The building permit was approved and a separate building permit application for a 982 square-foot garage was also approved.

The Brueskes' property is zoned as RR20, which allows for a primary residence and a single accessory dwelling unit less than 1,200 square feet. Chelan County Code

(CCC) §§ 11.88.010(1),.200(1). The zoning ordinance also prohibits commercial uses aside from short term rentals on properties zoned RR20. CCC § 11.04.020.

In April 2020, the Brueskes applied for a building permit (BP-200242) to construct three additional freestanding structures on their property. The building official denied the permit because the zoning ordinance allowed only one accessory dwelling unit. The Brueskes appealed to the land use hearing examiner who denied the appeal. The denial of this application is not before us.

In June 2021, the Brueskes amended their building plans and applied for another building permit (BP-210473) (the proposed addition). The application described a two-story building to be built adjacent to the single-family residence, which would be connected to it by a 40-foot long enclosed hallway.



Clerk's Papers (CP) at 90. The proposed addition is two-stories with three independent living spaces, each accessible from a long hallway running along one side of the addition.

The independent spaces consist of a main floor living area and a bathroom with a second-

floor loft containing two bedrooms and a bunkroom.



CP at 91 (proposed addition—First Floor Plan).



CP at 92 (proposed addition—Second Floor Plan).

The Brueskes' application for the proposed addition was denied as well. The building official concluded from the design of the proposed addition that it is considered an R-1 occupancy under the Building Code and not permitted under the applicable zoning ordinance. The building official noted that under the Building Code, a Residential Group R-1 contains sleeping units where the occupants are primarily transient in nature including hotels and motels. The three separate sleeping units are accessed from a common corridor, which is indicative of a hotel. "The addition is not considered part of the dwelling unit regardless as to whether it is connected by an enclosed corridor." CP at 85.

The building official noted that the current design included a large space marked "storage," which "could easily be adapted to use as a kitchen, though the plans do not indicate this." CP at 85. Finally, the building official noted that

> [t]he previous proposal was denied, and the Hearing Examiner upheld that denial in part because it proposed a space that "will likely be used as a kitchen" and in connection with the other features of the units, it was "clear that these structures may be used as separate dwelling units," In addition, because the units each have bathrooms, living areas, and sleeping areas, it appears each unit is meant to be a distinct unit, not an "addition" to the primary residence.

CP at 85. Ultimately, the building official concluded that the proposed addition was either a sleeping unit under the Building Code, or three accessory dwelling units under the Residential Code, both of which were prohibited by the applicable zoning ordinance. CP at 86.

The Brueskes appealed the building official's decision to the land use hearing examiner. The hearing examiner considered the staff report from Chelan County Community Development and its exhibits, the Brueskes' building permit application materials, declarations from Cathleen Brueske and Todd Smith, the Brueskes' architect, and the Brueskes' appeal letter.

The building official testified at the public hearing that the basis for denying the Brueskes' permit was that the proposed addition did "not qualify as an addition to an existing dwelling per the State Residential Code, due to the proposed not being an expansion or increase to the existing floor area." CP at 31. The building official clarified that the Residential Code defines an addition as "an extension or increase in floor area, number of stories, or height of a building or structure." CP at 32. He explained that the commentary to this definition indicates that the term "is only applicable to existing buildings, never new ones." *Id*. Since the proposal was attached to "the existing dwelling by a 40-[foot] corridor," it "does not qualify as an addition, since it is not an expansion of the existing floor area, but rather a new building." *Id*.

The Brueskes objected to the building examiner's testimony that the proposed addition did not qualify as an "addition" due to the primary residence being incomplete because that rationale was not present in the denial letter or the staff report. It does not appear that the hearing examiner ruled on this objection.

6

The hearing examiner affirmed the County's denial of the building permit. The

hearing examiner found that the plans for the proposed addition did not include kitchens,

but "clearly creates three separate, defined sleeping units that are not a part of the primary

residence." CP at 18. From these findings, the hearings examiner concluded that the

proposed addition qualified as an accessory dwelling unit, but exceeded the maximum

allowable square footage allowed. In addition, "R-1 occupancy is not an allowed use in

the RR20 zoning whether or not the units have kitchens. If the units have kitchens, they

qualify as an [accessory dwelling unit] and only one [accessory dwelling unit] is allowed

per property. There are 3 [accessory dwelling units] in this proposal." CP at 19.

The Brueskes appealed to this court under RCW 36.70C.150.[1]

ANALYSIS

The Brueskes raise several arguments to support their requested relief. We

address two of their arguments on appeal. The Brueskes's first argument is that the

hearing examiner erred by concluding that their proposed addition qualified as accessory

dwelling units. The Brueskes point out that a dwelling unit requires complete living

---

[1] "The superior court may transfer the judicial review of a land use decision to the court of appeals upon finding that all parties have consented to the transfer to the court of appeals and agreed that the judicial review can occur based upon an existing record. Transfer of cases pursuant to this section does not require the filing of a motion for discretionary review with the court of appeals." RCW 36.70C.150(1).

facilities including a kitchen and their proposed addition did not include kitchens.

Second, the Brueskes argue that the hearing examiner erred in concluding that the proposed addition should be classified as sleeping unit under the Building Code.[2]

The denial of a building permit is a land use decision. RCW 36.70B.020(4). In reviewing a land-use decision, this court limits its review to the record created before the hearing examiner. *Phoenix Dev., Inc. v. City of Woodinville*, 171 Wn.2d 820, 828, 256 P.3d 1150 (2011); *Pinecrest Homeowners Ass'n v. Glen A. Cloninger & Assoc.*, 151 Wn.2d 279, 288, 87 P.3d 1176 (2004); RCW 36.70C.130.

The Land Use Petition Act (LUPA), ch. 36.70C RCW provides the exclusive means for judicial review of a land use decision (with the exception of those decisions separately subject to review by bodies such as the growth management hearings boards)." *Phoenix Dev., Inc.*, 171 Wn.2d at 828 (citing *Woods v. Kittitas County*, 162 Wn.2d 597, 610, 174 P.3d 25 (2007)). Under LUPA, to be entitled to relief from the County's land

---

[2] Some of the findings found by the hearing examiner are conclusions of law. Findings of fact are a determination of whether the evidence shows that something occurred or existed. *Casterline v. Roberts*, 168 Wn. App. 376, 382, 284 P.3d 743 (2012). Thus, determining what amenities the proposed addition included is a factual finding. On the other hand, a determination made through the process of legal reasoning from the significance of evidentiary facts is a conclusion of law. *Moulden & Sons, Inc. v. Osaka Landscaping & Nursery, Inc.*, 21 Wn. App. 194, 197 n.5, 584 P.2d 968 (1978). The conclusions of law incorrectly labeled as findings of fact will be reviewed as conclusions of law. *Woodruff v. McClellan*, 95 Wn.2d 394, 622 P.2d 1268 (1980).

use decision, the Brueskes must establish at least one of the six standards set forth in

RCW 36.70C.130(1) has been met. The statute reads:

> The superior court, acting without a jury, shall review the record and such supplemental evidence as is permitted under RCW 36.70C.120. The court may grant relief only if the party seeking relief has carried the burden of establishing that one of the standards set forth in (a) through (f) of this subsection has been met. The standards are:
>
> (a) The body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless;
> (b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;
> (c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;
> (d) The land use decision is a clearly erroneous application of the law to the facts;
> (e) The land use decision is outside the authority or jurisdiction of the body or officer making the decision; or
> (f) The land use decision violates the constitutional rights of the party seeking relief.

Standards (a), (b), and (f) raise questions of law that we review de novo. *Phoenix*

*Dev., Inc. v. City of Woodinville*, 171 Wn.2d at 828. Codes and ordinances are construed

"according to the rules of statutory interpretation." *Dep't of Transp. v. City of Seattle*, 192

Wn. App. 824, 837, 368 P.3d 251 (2016) (citing *Ellensburg Cement Prods., Inc. v. Kittitas*

*County*, 179 Wn.2d 737, 743, 317 P.3d 1037 (2014)). Our objective is to ascertain and

give effect to the legislature's intent. *Ellensburg Cement Prods., Inc.*, 179 Wn.2d at 743.

When the meaning of language is plain on its face, the court must give effect to that plain

meaning. *City of Spokane v. Spokane County*, 158 Wn.2d 661, 673, 146 P.3d 893 (2006).

If the plain language is subject to only one interpretation, our inquiry ends. *Lake v.*

*Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010). "We must

also avoid an interpretation that results in unlikely or strained consequences." *Dep't of*

*Transp.*, 192 Wn. App. at 838 (citing *Broughton Lumber Co. v. BNSF Ry.*, 174 Wn.2d

619, 635, 278 P.3d 173 (2012)).

Courts give great deference to an agency's interpretations of its own regulations.

*Seven Hills, LLC v. Chelan County*, 198 Wn.2d 371, 394, 495 P.3d 778 (2021); *Habitat*

*Watch v. Skagit County*, 155 Wn.2d 397, 412, 120 P.3d 56 (2005) ("Local jurisdictions

with expertise in land use decisions are afforded an appropriate level of deference in

interpretations of law under LUPA."). However, "deference is not always due—in fact,

even a local entity's interpretation of an ambiguous local ordinance may be rejected."

*Ellensburg Cement Prods., Inc.*, 179 Wn.2d at 753.

Generally speaking, the Residential Code applies to the construction, alteration,

and enlargement of any detached one- and two-family dwellings or accessory structures.

INT'L CODE COUNCIL, INTERNATIONAL RESIDENTIAL CODE § R101.2 (Nov. 2021) (IRC).

At the public hearing, the building official testified that when reviewing a building permit

application, a building official must classify a use that fits the proposed building. If a

building permit application cannot be classified under the Residential Code, then the

building official applies the Building Code because the Building Code applies to "every

building or structure" whereas the Residential Code applies only to one- and two-family

dwellings and townhomes and their accessory structures. INT'L CODE COUNCIL,

INTERNATIONAL BUILDING CODE § 101.2 (Sept. 2021) (IBC).

*Accessory Dwelling Units*

In their first argument on appeal, the Brueskes argue that the hearing examiner's

conclusion that the proposed addition is an accessory dwelling unit under the Chelan

County Code is not supported by substantial evidence and therefore establishes error

under RCW 36.70C.130(1)(c). The County now concedes that the conclusion that the

proposed addition is an accessory dwelling unit is not supported by substantial evidence

because there is no evidence that the units had kitchens.

The Residential Code defines a "dwelling unit" as "[a] single unit providing

complete independent living facilities for one or more persons, including permanent

provisions for living, sleeping, eating, cooking and sanitation." IRC § R202.[3] An

---

[3] The hearing examiner applied the definitions of "dwelling unit" and "accessory dwelling unit" from the Chelan County Code, (sections 14.98.625 and 14.98.050) instead of the definitions provided by the Residential or Building Code. In its briefing, the County uses the definitions provided in the Residential and Building Code, but during oral argument suggested for the first time that the definitions used in the Chelan County Code should be used instead. We disagree. With certain exceptions that do not apply here, Chelan County adopted the International Residential and Building Code in chapter 3.04. The definitions provided in chapter 14.98 apply to Titles 10, 11, 12, 13, 14, 15, and 16 of the Chelan County Code. CCC 14.98.010. They do not apply to Title 3. Regardless, using the definitions provided by the Residential and Building Code does not have a material affect on our analysis.

11

"accessory structure" is defined as "[a] structure that is accessory to and incidental to that of the dwelling(s) and that is located on the same lot." *Id*. The record before the hearing examiner was uncontroverted that the proposed addition did not contain cooking facilities. Consequently, the finding that the proposed addition was a separate dwelling unit under the Chelan County Code was not supported by substantial evidence.

The County contends that this error was harmless because the hearing examiner concluded in the alternative that the building official correctly classified the Brueskes' proposed addition as sleeping units under the Building Code. The Brueskes' challenge this conclusion as well.

*Classification as Sleeping Units*

The Brueskes argue that the hearing examiner erred in concluding that their proposed addition should be classified as sleeping units under the Building Code instead of an addition to their primary residence under the Residential Code. The Brueskes contend that their proposed addition is not for commercial purposes and there is no evidence that the addition will be used for transient housing. Instead, they contend that the hearing examiner relied on speculation to conclude that the nature of the plans was indicative of transient lodging. The County responds that the hearing examiner correctly concluded that the Brueskes' proposal qualified as a sleeping unit under the Building Code and not an addition under the Residential Code.

"Sleeping unit" is defined in the Building Code as "[a] single unit that provides rooms or spaces for one or more persons, includes permanent provisions for sleeping and can include provisions for living, eating and either sanitation or kitchen facilities but not both. *Such rooms and spaces that are also part of a dwelling unit are not sleeping units*." IBC § 202 (emphasis added). Thus, by definition, if the Brueskes' addition is part of their dwelling unit then it is not a sleeping unit. The County contends that the proposed addition is not part of, or an addition to, the Brueskes' primary residence or dwelling unit, but is instead a separate building. As a separate building, the best use classification is as sleeping units under the Building Code.

In support of its position that the Brueskes' proposal is not part of, or an addition to their primary residence, the County contends that an "addition" can only be made to a completed "building," and since the Brueskes' residence was still under construction at the time they applied for an addition, the Brueskes' proposal did not qualify as an addition.

The County's argument requires us to consider the definition of several terms. An "addition" under the Residential Code is defined as "[a]n extension or increase in floor area, number of stories or height of a *building* or structure." IBC § 202 (emphasis added). A "building" is defined as "[a]ny one- or two-family *dwelling* or portion thereof, including townhouses, used or *intended to be used* for human habitation, for living, sleeping, cooking or eating purposes, or in any combination thereof, or any accessory

13

structure." IRC § R202 (emphasis added). A "dwelling" is defined as "[a]ny building that contains one or two *dwelling units* used, *intended, or designed to be built*, used, rented, leased, let or hired out to be occupied, or that are occupied for living purposes." IRC § R202 (emphasis in original). As noted above, the definition of a "dwelling unit" is "[a] single unit providing complete independent living facilities for one or more persons, including permanent provisions for living, sleeping, eating, cooking and sanitation." *Id*.

The County reasons that an addition under the Residential Code only applies to buildings, which are dwellings that contain a dwelling unit. The County maintains that since the Brueskes' residence was still under construction, it was not a dwelling unit because it lacked "complete independent living facilities." The County's argument relies upon an unreasonable interpretation of these definitions.

The adjective "complete," within the definition of a "dwelling unit," modifies the noun phrase "independent living facilities." It means that the unit provides all the necessary facilities for living independently, such as a kitchen, bathroom, and sleeping area. It does not mean that the construction of the facilities must be complete.

Even if, however, a dwelling unit requires an existing building, our conclusion would not change. The Residential Code applies to additions that are part of a building. The definition of "building" uses the term "intended." The word "intended" means "proposed" which means "to form . . . a plan or intention." WEBSTER'S THIRD NEW

14

INTERNATIONAL DICTIONARY 1175, 1819 (1993). Consequently, the word "intended" as used in the definition of "building" contemplates something not yet completed—something planned.

The definition of "dwelling" also uses the term "intended" in addition to the phrase "designed to be built." The adjective phrase "designed to be built" modifies "dwelling unit," and makes it clear that a dwelling includes a dwelling unit that is designed to be built, or a dwelling unit that is not yet built. Under the plain language of these definitions, a permit seeking to add an "addition" to an incomplete one- or two-family dwelling is covered by the Residential Code.

The County suggests that we should give deference to the building official's interpretation of these terms. On appeal before the hearing examiner, the building official provided the definition of an addition and testified that "The [Residential Code] commentary . . . is used to describe the condition when the floor area, number of stories, or height of an existing building or structure is increased. The term is only applicable to existing buildings, never new ones." CP at 32. On appeal to this Court, the County quotes this testimony and relies on the building official's interpretation of a code commentary to support its position. But in its brief to this Court, the County does not cite to the specific code commentary or provide the code commentary. *See* Brief of Resp. at 13, 16. Nor does it provide authority that this commentary has been adopted by Washington or Chelan County.

Assuming this commentary applies, the Residential Code defines an "existing building" as "a building erected prior to the date of adoption of the appropriate code, *or one for which a legal building permit has been issued*." IBC § 202. At the time the Brueskes filed a permit application to build an addition to their unfinished dwelling, they had a legally issued permit to build their residence.

Finally, the County argues that the proposed addition does not qualify as an addition because it does not increase the floor area, number of stories or height of the primary residence. The County points out that the proposed addition will not share any exterior walls with the permitted single-family residence and that the proposed addition does not extend or increase the floor area, number of stories, or height of the building or structure. Thus, the County argues, even if the Residential Code applies, the proposed addition does not meet the definition of "addition" under Residential Code § R202. We disagree.

First, the addition does extend and increase the floor area of the single-family residence. While not a traditional design, the proposed addition would be connected to the permitted single-family residence thereby increasing the residence's square footage. The County cites no authority for its contention that the proposed addition must share exterior walls with the permitted single-family residence. Indeed, the definition of "addition" under Residential Code § R202 contains no such requirement. Nor does the

County cite any authority that an enclosed corridor is insufficient to connect the proposed addition to the primary residence.

While courts give deference to an agency's interpretations of its own regulations, these are definitions created by the International Residential Code, not Chelan County. We note that other than the language of the definitions, the County fails to cite any cases from Washington or any other jurisdiction to support their contention that the Residential Code does not apply to permits for additions or alternations to a dwelling that is permitted but unfinished.

Under RCW 36.70C.130(1)(b) the hearing examiner applied an erroneous interpretation of the definitions within the Residential Code when the hearing examiner concluded that an "addition" under the Residential Code can only be made to an existing "building."

The dissent contends that it is irrelevant whether the Brueskes' primary residence was unfinished because regardless of which code applies, the hearing examiner determined that the proposed addition included three separate dwelling units or sleeping units, both of which are precluded by the existing zoning ordinance. Dissent at 1. We disagree. Application of the correct code is dispositive. The County has already conceded that the hearing examiner erred in concluding that the proposed addition qualified as separate dwelling units because none of the units contained kitchens. Moreover, the hearing examiner's conclusion that the proposed addition should be

classified as "sleeping units" requires a determination that the proposed unit it not part of a dwelling unit under the Residential Code. By definition, if the Brueskes' addition is part of (i.e., an addition to) their dwelling unit, it is not a sleeping unit.

The hearing examiner concluded that the proposed addition was not part of the primary dwelling unit. The only explanation for this finding was that the Brueskes' prior permit application for a similar building had been denied and the hearing examiner determined that the "clear intent of the Appellants is the building of sleeping units that are separate from the primary dwelling unit." CP at 136. The Brueskes point out that this finding is not supported by any evidence. Instead, it is based on impermissible speculation. *See Cox v. City of Lynnwood*, 72 Wn. App. 1, 7-8, 863 P.2d 578 (1993) (denial of boundary line adjustment motivated by possible future actions was arbitrary). Even the County concedes that "whether a development application is regulated by the [Residential Code] or [Building Code] turns on the structural components of the proposal, *not* on the intended use of a building." Brief of Resp. at 22-23.

The Brueskes have applied to build an addition to their dwelling. Because their proposed addition is part of their dwelling, it cannot be classified as a "sleeping unit" under the Building Code, but instead is an "addition" under the Residential Code. The hearing examiner applied an erroneous interpretation of the law by concluding that the Residential Code did not apply to the Brueskes' permit application.

Because the Brueskes have established at least one of the standards set forth in RCW 36.70C.130(1), they are entitled to relief. We reverse the hearing examiner's affirmance of the denial of BP-210473 and remand for a new hearing on the Brueskes's permit application. Since we are granting a new hearing, we do not address the Brueskes alternative arguments.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

I CONCUR:

_____
Pennell, J.

No. 39001-2-III

SIDDOWAY, J. (dissenting in part) — The Chelan County (County) building official's denial of the Brueskes' application for a permit to construct an addition to their single-family residence was not based on his belief that since the residence was still under construction, it could not be a residential "addition" and that the International Building Code (IBC) rather than the International Residential Code (IRC) applied. It was because he concluded the three units comprising the addition "clear[ly] . . . may be used as separate dwelling units" and "because the units each have bathrooms, living areas, and sleeping areas, it appears each unit is meant to be a distinct unit, not an 'addition' to the primary residence." Clerk's Papers (CP) at 85.

The hearing examiner's decision affirming denial of the permit likewise was not based on the uncompleted construction status of the residence. It, too, was based on the hearing examiner's judgment that the proposal "creates three separate, defined sleeping units that are not a part of the primary residence," with the applicants "go[ing] to great lengths to create . . . distinguishable units, separate from the residence." CP at 136. At oral argument of the appeal, the County's lawyer even conceded that if the Brueskes applied for a permit to construct the same "addition" after obtaining a certificate of occupancy for the residence, their application would be denied for the same reason: that it is perceived to consist of sleeping units, and thereby R-1 occupancy in an RR20 zone. Wash. Court of Appeals oral argument, *Brueske v. Chelan County*, No. 39001-2-III, (Mar. 21, 2023) at 15 min., 22 sec. to 16 min., 28 sec.

No. 39001-2-III
*Brueske v. Chelan County (dissent in part)*

The argument that approval for the addition *could* be denied under the IRC because that code permits "additions" to only completed residences was first relied on by the County during the appeal to the hearing examiner. It was mentioned in the presentation by the building official, who pointed out that the commentary to the IRC states that the term "addition" is only applied to existing buildings, never new ones. CP at 32. It was brought up again by the deputy county attorney as "just one other point." CP at 44-45. It is brought up as one argument in the briefing on appeal. Br. of Resp't at 14-17. But as the Brueskes' lawyer pointed out to the hearing examiner, even if the IRC permits "additions" to only completed residences,

> It's not the basis of the denial; it's not the basis of the staff report; it's not part of the record; and it's been introduced for the first time here today.

CP at 46.

I would not resolve the appeal by seizing on and rejecting this late-raised rationale for applying the IBC. To begin with, the majority unnecessarily rejects a reasonable construction of the defined terms "building," "dwelling," and "dwelling unit" on a record that is silent as to why drafters and adopters of the uniform code might think it important to issue permits for additions only after the original structure has been completed and inspected.[1]

---

[1] At oral argument, the County's lawyer agreed that nothing in our record sheds light on the drafters' or the County's reasons for requiring that additions be to completed structures. Wash. Ct. App. oral argument, *supra*, at 28 min., 45 sec. to 29 min., 44 sec. (on file with court).

2

The County's construction is reasonable. The majority emphasizes that the definitions of "building" and "dwelling" include the adjectival phrases "intended to" and "designed to," but more important to the definitions than those adjectival phrases are the nouns to which "building" and "dwelling" are compared. "Building" depends on the meaning of "dwelling," and "dwelling" depends on the meaning of "dwelling unit." IRC § R202. The foundational term, "dwelling unit" is defined to mean "[a] single unit providing *complete independent living facilities* for one or more persons, including *permanent provisions* for living, sleeping, eating, cooking, and sanitation." IRC § R202 (emphasis added). Uncompleted construction does not satisfy that foundational definition.

The phrases "intended to" and "designed to" are essential so that the definitions encompass housing that has been completed, but is not yet occupied. But I disagree that "intended" can be equated with "not yet completed." A prepared site and foundation is intended to be further developed into a building, but it is not something that would commonly be referred to as a "building." Rough framing, even after some exterior construction, is not something that one would call a "dwelling."

It is also not necessary to address whether the uncompleted construction of the residence would be a reason for denying the permit, because it is not the reason the permit was denied, or that the denial was affirmed. The permit was denied and the denial was affirmed because the County's building officials and hearing examiner ascribed

3

residential classification R-1 based not on how the Brueskes' addition is proposed to be used or can legally be used, but based on a judgment that, to them, the Brueskes' plans look too much like a boarding house, congregate living facility, or hotel. Zoning enforcement is the solution if the Brueskes use the addition in the future as transient housing. The County fails to demonstrate that making lifestyle judgments about how families should design guest quarters in their single-family residences is a proper concern of its building officials.

I would reverse the hearing examiner's decision and remand with instructions to process the Brueskes' application as compliant with the IRC or IBC.

_____
Siddoway, J.